2024-1285

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

APPLE INC.,

*Appellant*

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*

MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,

*Intervenors*

---

Appeal from the United States International Trade Commission in
Investigation No. 337-TA-1276

---

## ACT | THE APP ASSOCIATION, CHAMBER OF PROGRESS, NETCHOICE, AND TECHNET'S MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE* IN SUPPORT OF APPELLANT

---

Tara L. Kurtis
PERKINS COIE LLP
110 N. Wacker Drive, Suite 3400
Chicago, Illinois 60606
Phone:  (312) 324–8607
E-mail: TKurtis@perkinscoie.com

Amanda Tessar
PERKINS COIE LLP
1900 Sixteenth St., Suite 1400
Denver, Colorado 80202
Phone:  (303) 291–2357
E-mail:  ATessar@perkinscoie.com

COUNSEL FOR *AMICI CURIAE*

April 12, 2024

FORM 9. Certificate of Interest                                                    Form 9 (p. 1)
                                                                                   March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2024-1285 |
| **Short Case Caption** | Apple Inc. v. ITC |
| **Filing Party/Entity** | ACT \| The App Association, Chamber of Progress, NetChoice, TechNet |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 04/12/2024                    Signature: /s/Amanda Tessar

                                     Name:      Amanda Tessar

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| ACT \| The App Association | | |
| Chamber of Progress | | |
| NetChoice | | |
| TechNet | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

Amici move for leave to file the attached amicus brief in support of Appellant Apple, Inc. ("Apple"). Apple does not oppose this motion. Appellee ITC indicated that it would state its position upon receipt of amici's motion and may file a response. Intervenors Masimo Corporation and Cercacor Laboratories, Inc. do not consent to the filing of amici's brief, but did not indicate whether they would file a response in opposition to amici's present motion.

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), amici below state "(A) the movant's interest; and (B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case."

## I.    Statement of Interest

ACT | The App Association ("ACT") is an international not-for-profit grass-roots advocacy and education organization representing more than 5,000 small business software application developers and technology firms that create the apps used on mobile devices and in enterprise systems around the globe. Today, ACT represents an ecosystem valued at approximately $1.7 trillion and responsible for 5.9 million American jobs. ACT members lead in developing innovative applications and products across consumer and enterprise use cases.

Chamber of Progress is a tech industry coalition devoted to a progressive society, economy, workforce, and consumer climate. It backs public policies that will build a fairer, more inclusive country in which all people benefit from technological

advances. Its work is supported by corporate partners, including in the finance/crypto, retail, high-tech, and crytpo/finance industries, many of whom will be subject to the law at issue.

NetChoice is a national trade association of online businesses that share the goal of promoting free enterprise and free expression on the Internet. NetChoice's members operate a variety of popular websites, apps, and online services, including Meta (formerly Facebook), YouTube, and Etsy. NetChoice's guiding principles are (1) promoting consumer choice, (2) continuing the successful policy of "light-touch" Internet regulation, and (3) fostering online competition to provide consumers with an abundance of services.

TechNet is the national, bipartisan network of technology CEOs and senior executives that promotes the growth of the innovation economy by advocating a targeted policy agenda at the federal and 50-state level. TechNet's diverse membership includes dynamic American businesses ranging from startups to the most iconic companies on the planet and represents over 4.4 million employees and countless customers in the fields of information technology, artificial intelligence, e-commerce, the sharing and gig economies, advanced energy, transportation, cybersecurity, venture capital, and finance.

The ITC is a trade forum with the power to wholesale exclude imports of entire products or product lines, including from United States companies, but without requiring the showing of irreparable harm that would be demanded in district courts for analogous types of injunctive relief.  The power to exclude is extraordinary:  it can, in many instances, shut companies entirely out of the United States market.  There are therefore statutory safeguards in place to limit the exercise of this power to specific circumstances.  The domestic industry analysis is one of the primary statutory checks on the ITC's authority.  If the ITC is permitted to ignore or relax that requirement, such that it need not identify any real United States market in need of the ITC's protection before issuing exclusion orders, then the ITC fails in its fundamental mission.  More importantly to amici, such an outcome serves to harm innovation and economic leadership the United States economy—precisely the opposite of what the ITC is meant to do.

Amici collectively represent thousands of member companies across a broad range of industries, including high-tech, manufacturing, automotive, pharmaceutical, financial, and telecommunications.  They are concerned that the precedent set by the Commission's order permits a complainant to access the ITC's extraordinary remedy with only a hypothetical article at the time of the complaint.  Lowering the bar on the domestic industry requirement in a way not contemplated by statute will

have impacts that go beyond this case and will ultimately stifle American innovation, harm domestic markets, and cause significant job losses for American workers.

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(e), no party's counsel authored this brief in whole or in part, no party or a party's counsel directly contributed money that was intended to fund preparing or submitting this brief,[1] and no person—other than the amici curiae, their members, or their counsel—contributed money that was intended to fund preparing or submitting the brief.

## II.   Amici's Brief Provides Insight Into Their Members' Interests In Ensuring That The ITC Remains An Agency Dedicated To Protecting Domestic Industry

Amici, who represent a broad swath of a wide range of industries and a substantial percentage of the United States economy as a whole, are deeply concerned about the Commission's order in this case.  Amici's worry is that if the order stands, it could increase the number of unfounded exclusion orders that are entirely divorced from the ITC's foundational mission to protect established United States markets, to the detriment of American innovators and the public.

The concurrently filed amicus brief explains that Congress granted the ITC the extraordinary power to issue exclusion orders without requiring the patentee to

---

[1]   For clarity, Appellant Apple, Inc., is a member of some of the amici organizations (specifically, ACT | The App Association, Chamber of Progress, and TechNet), and pays member dues in that capacity, but Apple did not participate in those organizations' preparation of amici's brief or this motion.

show irreparable harm.  Given that broad power, the domestic industry requirement is meant to limit the ITC's use of exclusion orders to only those cases in which the patentee has an actual product and a true domestic market (whether their own or via license).  But initiating investigations and issuing exclusion orders without this critical statutory safeguard being met, as the Commission did here, creates substantial risks for United States markets, putting the ITC directly at odds with its statutory mandate to protect domestic industry.

The ruling gives patentees too easy a route to the ITC to justify the agency's broad exclusion powers.  Amici's brief explains that innovators like amici's members may have to reduce investments in job-creating segments like research, development, and manufacturing to instead defend against an increasing number of improper ITC investigations and the threat of exclusion of their products from the United States that those investigations bring.  Amici also explain the impact that an exclusion order could have on importers like amici's members (large and small), or the ecosystem of jobs surrounding those importers, and how such an order can be particularly impactful for startups and small businesses.

Amici further explain how the Commission's order encourages non-practicing patentees to avoid investing in their own development and market-growth efforts and instead offload that work onto companies like amici's members.  This goes

against the purpose of the ITC to protect those companies who work to create a domestic market. Amici's member companies have taken substantial risks to develop new domestic markets and have no interest in being surprised by potentially devastating ITC investigations and exclusion orders after they have successfully grown markets for their products. Meanwhile, the patentee who sits back can avoid all the risk associated with developing a new market and, if granted an exclusion order, effectively remove competitors from the market that others built. This disincentivizes American companies, including many of amici's members, from investing in the domestic market.

Amici ask the Court to consider these real-life consequences of the relaxed domestic industry standards that the Commission applied in this case, which has been a trend at the ITC for many years. Amici present the perspective of the industries impacted by exclusion orders as a whole rather than the views of any individual party.

## CONCLUSION

Amici respectfully request leave to file the concurrently filed amicus brief.

Respectfully submitted,

PERKINS COIE LLP

<u>/s/Amanda Tessar</u>
Amanda Tessar

**COUNSEL FOR AMICI CURIAE ACT | THE APP ASSOCIATION, CHAMBER OF PROGRESS, NETCHOICE, AND TECHNET**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

1.     This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A). Excluding the portions exempted by rule, the brief contains 1,286 words as counted by the word-processing software used to prepare it.

2.     This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft® Word and 14-point Times New Roman type.


Dated: April 12, 2024                         /s/Amanda Tessar
                                                        Amanda Tessar