**Nos. 2024-1285**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

APPLE INC.,

*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*,

MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,

*Intervenors*.

On Appeal from the United States International Trade Commission in Investigation No. 337-TA-1276

**APPELLANT APPLE INC.'S MOTION TO EXPEDITE ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedure 27 and Federal Circuit Rule 27(c), Appellant Apple Inc. respectfully requests that this Court schedule this case for oral argument at the earliest possible date.[1]

Apple is currently banned from importing or selling Apple Watches with light-based pulse oximetry—i.e., the ability to measure a user's blood oxygen—in the United States. This appeal involves the International Trade Commission's

---

[1] Appellee International Trade Commission and Intervenors have indicated that they oppose this motion and will file a response.

October 2023 decision underlying that ban—a decision that Apple believes is flawed in many respects, including with regard to the purported "domestic industry" on which the ban is based. While the appeal is pending, consumers cannot purchase Apple Watches that provide the Blood Oxygen feature and have thus lost access to an important health-and-wellness feature.

Given the harm to Apple and U.S. consumers each day the ban remains in effect, Apple has undertaken to move this appeal forward as expeditiously as possible (including filing its notice of appeal nearly 60 days early and not seeking any extensions on its opening or reply briefs). In view of the current permanent injunction—one that can only be lifted through resolution of this appeal—and the fact that neither Masimo nor the Commission would suffer any cognizable prejudice in having oral argument scheduled sooner, Apple respectfully requests that this Court calendar this case for oral argument as soon as possible.

## BACKGROUND

1. Although the Apple Watch products have hundreds of features, only one is at issue: the Blood Oxygen feature. *E.g.*, Appx442 & n.50. That feature, which is also known as "pulse oximetry," allows users to measure the oxygen saturation of their blood on demand or in the background. Apple Opening Br. 8. The accuracy of the Blood Oxygen feature has been praised by medical journals. *See* C.A. Dkt. 31 at Reply-Add 25-41. In front of the Commission, numerous

medical professionals and organizations like the American Heart Association explained the importance of Watch to public health and medical research. C.A. Dkt. 31 at Reply-Add 2-23; *see also* Apple Opening Br. 12-13. Today, while an intervening ruling by the Exclusion Order Enforcement Branch of U.S. Customs and Border Protection (CBP) permits Apple to sell redesigned Apple Watch products without the Blood Oxygen feature, C.A. Dkt. 33 at 2, the Commission's decision continues to block consumers from purchasing an Apple Watch with the Blood Oxygen feature enabled.[2]

**2.** The Commission's decision banning Apple Watch with the Blood Oxygen feature issued in late October 2023. Apple Opening Br. 1. Apple filed an (unsuccessful) motion to stay the ruling pending appeal with the agency just one business day after receiving the Commission's decision. *See generally* Appx27230-27243. The Commission's order became final and appealable at 12:01am on December 26, 2023. *See* C.A. Dkt. 7 at 1. Fewer than ten hours later, Apple filed its notice of appeal and requested an emergency stay pending appeal. C.A. Dkts. 1, 5, 7.

On December 27, 2023, this Court granted Apple's motion for an interim stay pending consideration of the parties' briefing. C.A. Dkt. 19. While this Court

---

[2] In a separate request to CBP that is still pending, Apple has sought approval for an additional alternative redesign. Even if that request is granted, however, Apple Watch itself would still not provide pulse oximetry functionality.

lifted the stay three weeks later after full briefing, it did so without "reach[ing any] conclusion on the merits of the appeal" and without making express findings regarding irreparable harm, the balance of the equities, or the public interest. C.A. Dkt. 33 at 2. Apple subsequently filed its opening and reply briefs without seeking any extensions, despite the complexity of the issues appealed and the sheer volume of the agency record.[3] The Joint Appendix was filed earlier today. Therefore, the appeal is now ready to be calendared.

## ARGUMENT

This Court's rules permit a party to request expedited proceedings, including when the "normal … disposition schedule may adversely affect one of the parties, as in appeals involving … permanent injunctions." Fed. Cir. R. 27(c) & practice note. This Court has granted motions to expedite oral argument filed after the close of briefing, including in at least one recent ITC appeal. *See Chamberlin Group v. ITC*, Nos. 22-1664, -1656, ECF No. 83 (Feb. 8, 2023) (granting motion to expedite hearing over Commission and intervenor's opposition); *see also, e.g.*, *Impinj, Inc. v. NXP USA, Inc.*, No. 2024-1045, ECF No. 23 (Mar. 7, 2023) (granting motion to expedite); *Vas Realty, LLC v. United States*,

---

[3] Intervenors and the Commission sought—and received—a 44-day extension for their response briefs, which Apple did not oppose as a professional courtesy. C.A. Dkts. 47, 48. Apple's response to the extension motion emphasized the need for expedient resolution and previewed its "planned request to expedite oral argument." C.A. Dkt. 47 at 1.

No. 21-1962, ECF No. 52 (same); *American Institute for International Steel v. United States*, No. 19-1727, ECF No. 66 (Oct. 17, 2019) (same).

Apple respectfully submits that expedited oral argument is warranted here, given the presence of an injunction against an important health-and-wellness feature—and given the importance of making that feature available to the American public. Apple has pursued multiple avenues to reinstate the public's access to the Blood Oxygen feature, including (1) filing multiple motions to stay the decision below, (2) noticing its appeal nearly sixty days early, and (3) filing its merits briefs without seeking any extension—despite having, for example, just 21 days to respond to the Commission's and Intervenors' ("Masimo") nearly 28,000 words of briefing. *See supra* pp. 3-4. Due to Section 337's unique procedures (which required Apple to wait months before appealing the Commission's decision) and Masimo's and the Commission's lengthy extension request, the decision has already been in place for over nine months and Apple and the public have already been subject to the Commission's ban on Apple Watches with the Blood Oxygen feature for over six months. Setting oral argument at the earliest possible date is the only remaining mechanism available to hasten reversal of the Commission's erroneous decision.

Notably, Masimo and the Commission will not suffer any cognizable prejudice by setting oral argument at an early date. Even under the status quo, this

Court's "[c]ases are generally scheduled for a calendar approximately six weeks after the last brief and the appendix are filed," Fed. Cir. IOP #3, meaning that in the normal course granting Apple's request should only advance the argument date by a matter of several months. More broadly, Masimo and the Commission have repeatedly (and wrongly) argued that Apple's arguments in this appeal are "weak and unconvincing." *E.g.*, C.A. Dkt. 23 at 1 (Commission opposition to motion to stay); *see also* C.A. Dkt. 61 at 1 (Masimo describing Commission's decision as a "routine … application of Section 337"). Apple of course disputes these characterizations, but taken at face value, they suggest that Masimo and the Commission should have no problem preparing for an oral argument on a somewhat faster-than-normal timeline.

Even beyond Apple's strong interest in being able to sell a fully-featured product that provides the Blood Oxygen functionality, the public itself has a substantial stake in that feature and this case. In the words of a few of the many physicians who filed public interest letters with the Commission on Apple's behalf:

- "[T]aking [the blood oxygen] feature out of the hands of consumers would negatively impact the public health and welfare," C.A. Dkt. 30 at Reply-Add-17 (Dr. Richard Milani);

- "[T]he oxygen saturation feature of the Apple Watch is a highly accurate device feature," which serves the important purpose of "alert[ing] users to

- potential health issues" such as "respiratory or cardiac problem[s]," C.A. Dkt. 30 at Reply-Add-20 (Dr. Stephen Ruoss); and

- "[M]y research group has found the Apple Watch to be an exceptional device that accurately measures important parameters such as … oxygen saturation" and can "help predict the onset of acute illness." C.A. Dkt. 30 at Reply-Add-23 (Dr. Bowler).

Published scientific studies have further confirmed these statements, concluding that "the measurements of [blood oxygen] obtained using the Apple Watch are reliable compared to the standard pulse oximetry technique in patients with cardiovascular disease, lung disease and healthy subjects" and—more simply—that Apple Watch "provides reliable [blood oxygen] values when compared to a medical-grade pulse oximeter[.]" *See* C.A. Dkt. 30 at Reply-Add-25 to Reply-Add-41.

In sum, every day that passes before oral argument increases the time in which consumers in the U.S. are unable to purchase an Apple Watch with the Blood Oxygen feature. *Cf. Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995) (en banc) (acknowledging injunctive relief may not be appropriate where it conflicts with the public interest); *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 864 (Fed. Cir. 1987) (public had interest in purported infringer's "continuing ability to produce pacemaker leads"); *Advanced Cardiovascular*

*Systems, Inc. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 561 (D. Del. 2008) (noting the "strong public interest in maintaining diversity" in market for product). Apple respectfully submits that this public need, too, weighs in favor of expediting oral argument.

## CONCLUSION

For the foregoing reasons, Apple respectfully requests that this Court expedite oral argument, setting it on the first available argument calendar.

Dated:  August 7, 2024                                   Respectfully submitted,

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

*Counsel for Appellant Apple Inc.*

**CERTIFICATE OF INTEREST**

Counsel for Appellant Apple Inc. certifies the following:

**1.  Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

**2.  Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.  Parent Corporations and Stockholders**.  Fed. Cir. R. 47.4(a)(3).  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.  Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

**WILMER CUTLER PICKERING HALE AND DORR LLP:**  Brittany Blueitt Amadi, Thomas Anderson, James Bor-Zale, Alison Burton, David L. Cavanaugh, Jennifer Charlton (former), Jonathan A. Cox, Ravi Deol, Kim Do, Laura Donovan, Sydney Donovan, Michael Esch (former), Nina Garcia, Richard Goldenberg (former), David Gringer, Vikram Iyer, Brian Jacobsmeyer (former), Julius Jefferson (former), Rauvin Johl, Jennifer John (former), Joshua Lerner, James Lyons, Lauren Mandell, Courtney Merrill, Zach Nemtzow, Henry Nikogosyan, Richard W. O'Neill, Nora Q.E. Passamaneck, Allison Que, David Ross, Cristina Salcedo, Hannah Santasawatkul, Emily Scherker, Michaela P. Sewall, Labdhi Sheth, Linda Sun (former), Jose Valenzuela, Cynthia D. Vreeland, Yifan (Ivan) Wang, Amy K. Wigmore

**FISH & RICHARDSON P.C.:**  Michael Amon, Benjamin Elacqua, Scott Flanz

**GIBSON, DUNN & CRUTCHER LLP:** Brian Andrea (former), David Brzozowski, Mark Lyon (former)

**POLSINELLI LAW FIRM:** Deanna Okun, Sean Wesp

**WEIL, GOTSHAL & MANGES LLP:** Mark Perry

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below)   [ ] No   [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

Already filed.

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: August 7, 2024

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally spaced typeface and includes 1,545 words.

2. The foregoing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
(650) 858-6000

August 7, 2024