No. 2024-1285

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

APPLE INC.,

*Appellant,*

*v.*

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

MASIMO CORPORATION, CERCACOR LABORATORIES, INC.,

*Intervenors,*

On Appeal from the United States International Trade Commission
in Investigation No. 337-TA-1276

## APPELLANT APPLE INC.'S NON-CONFIDENTIAL COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC

JOSEPH J. MUELLER
SARAH R. FRAZIER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

DAVID P. YIN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC  20037
(202) 663-6000

May 4, 2026

MARK D. SELWYN
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

DEREK GOSMA
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 S. Grand Avenue, Suite 2400
Los Angeles, CA  90071
(213) 443-5300

*Attorneys for Appellant Apple Inc.*

# CERTIFICATE OF INTEREST

Counsel for Appellant Apple Inc. certifies the following:

**1.     Represented Entities**.  Fed. Cir. R. 47.4(a)(1).  Provide the full names of all entities represented by undersigned counsel in this case.

Apple Inc.

**2.     Real Party in Interest**.  Fed. Cir. R. 47.4(a)(2).  Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

None.

**3.     Parent Corporations and Stockholders**.  Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4.     Legal Representatives**.  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

**WILMER CUTLER PICKERING HALE AND DORR LLP:**  Brittany Blueitt Amadi, Thomas Anderson, James Bor-Zale, Alison Burton, David L. Cavanaugh, Jennifer Charlton (former), Jonathan A. Cox, Ravi Deol, Kim Do (former), Laura Donovan, Sydney Donovan, Michael Esch (former), Nina Garcia, Richard Goldenberg (former), David Gringer, Vikram Iyer, Brian Jacobsmeyer (former), Julius Jefferson (former), Rauvin Johl (former), Jennifer John (former), Joshua Lerner, James Lyons, Lauren Mandell, Courtney Merrill, Zach Nemtzow, Henry Nikogosyan (former), Richard W. O'Neill, Nora Q.E. Passamaneck (former), Allison Que, David Ross, Cristina Salcedo (former), Hannah Santasawatkul, Emily Scherker (former), Michaela P. Sewall, Labdhi Sheth (former), Linda Sun (former), Jose Valenzuela, Cynthia D. Vreeland, Yifan (Ivan) Wang, Amy K. Wigmore

**FISH & RICHARDSON P.C.:**  Michael Amon, Benjamin Elacqua, Scott Flanz

**GIBSON, DUNN & CRUTCHER LLP:**  Brian Andrea (former), David Brzozowski, Mark Lyon (former)

**POLSINELLI LAW FIRM:**  Deanna Okum, Sean Wesp

**WEIL, GOTSHAL & MANGES LLP:**  Mark Perry

**5.    Related Cases**.  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

[X] Yes (file separate notice; see below)    [ ] No    [ ] N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  Please do not duplicate information.  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

Already filed.

**6.    Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None.

Dated:  May 4, 2026                    /s/ Mark D. Selwyn
                                       MARK D. SELWYN
                                       WILMER CUTLER PICKERING
                                         HALE AND DORR LLP
                                       2600 El Camino Real, Suite 400
                                       Palo Alto, CA  94306
                                       (650) 858-6000

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ......................................................................v

STATEMENT OF COUNSEL ....................................................................1

POINTS OVERLOOKED OR MISAPPREHENDED BY THE
      PANEL...........................................................................................2

INTRODUCTION ......................................................................................3

BACKGROUND ........................................................................................4

      A.      The Statutory Scheme ...................................................4

      B.      Apple's And Masimo's Products .........................................5

      C.      The Agency's Ruling ...........................................................7

      D.      Appellate Briefing And Oral Argument................................9

      E.      The Panel's Ruling ..........................................................10

REASONS FOR GRANTING REHEARING ..........................................11

I.      EN BANC REHEARING IS WARRANTED TO ADDRESS TWO NOVEL
      QUESTIONS REGARDING THE DOMESTIC INDUSTRY
      REQUIREMENT ......................................................................11

      A.      The Economic Prong's "Significant Investment In Labor
                 Or Capital" Requirement Cannot Be Read To Encompass
                 Research And Development Expenditures For A
                 Standalone, Non-Patent-Practicing Device.........................11

             1.      Section 337(a)(3)(B) cannot be read to cover
                     research and development costs.................................11

2.      Subsection 337(a)(3)(B) cannot be read to cover expenditures made when developing a standalone device that does not practice the patent ....................................14

B.      The Panel Legally Erred In Holding The Technical Prong Can Be Satisfied Without Showing That The Physical Devices Relied Upon Are "Representative" Of The Claimed Article ..................................................................16

II.      REHEARING IS WARRANTED TO CORRECT THE PANEL DECISION'S MULTIPLE *CHENERY* ERRORS ........................................19

CONCLUSION ..........................................................................20

ADDENDA

CERTIFICATE OF COMPLIANCE

**CONFIDENTIAL MATERIAL OMITTED**

The material omitted from page 6 contains images of device prototypes that Intervenors Masimo Corporation and Cercacor Laboratories, Inc. designated as Confidential Business Information under the Administrative Protective Order in ITC Investigation No. 1276.

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Apple, Inc. v. Samsung Electronics Co.*,
839 F.3d 1034 (Fed. Cir. 2016) (en banc) ........................................19

*Broadcom Corp. v. International Trade Commission*,
28 F.4th 240 (Fed. Cir. 2022) ................................................4, 5, 15

*Calcutt v. Federal Deposit Insurance Corp.*,
598 U.S. 623 (2023)..................................................................*passim*

*ClearCorrect Operating, LLC v. International Trade Commission*,
810 F.3d 1283 (Fed. Cir. 2015) ..........................................................17

*John Mezzalingua Associates, Inc. v. International Trade
Commission*,
660 F.3d 1322 (Fed. Cir. 2011) ......................................................3, 4

*Lashify, Inc. v. International Trade Commission*,
130 F.4th 948 (Fed. Cir. 2025) ..........................................................14

*Lessors of Abchakan Village v. Secretary of Defense*,
137 F.4th 1301 (Fed. Cir. 2025) ....................................................1, 20

*Marx v. General Revenue Corp.*,
568 U.S. 371 (2013)............................................................................13

*Microsoft Corp. v. International Trade Commission*,
731 F.3d 1354 (Fed. Cir. 2013) ......................................................9, 17

*Motorola Mobility, LLC v. International Trade Commission*,
737 F.3d 1345 (Fed. Cir. 2013) ........................................9, 11, 15, 16

*Securities & Exchange Commission v. Chenery Corp.*,
332 U.S. 194 (1947)..............................................................................1

*Spansion v. International Trade Commission*,
629 F.3d 1331 (Fed. Cir. 2010) ............................................................4

*State Farm Fire & Casualty Co. v. United States ex rel. Rigsby*,
    580 U.S. 26 (2016)..................................................................................13

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1996) ..................................................................4

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)..................................................................................13

*Zircon Corp. v. International Trade Commission*,
    101 F.4th 817 (Fed. Cir. 2024) ...............................................................15

## DOCKETED CASES

*Lashify, Inc. v. International Trade Commission*,
    No. 23-1245 (Fed. Cir.) ...........................................................................14

## STATUTES

19 U.S.C.
    §1337(a)(2) ...........................................................................................1, 4
    §1337(a)(3) ......................................................................................2, 4, 11
    §1337(a)(3)(B) ......................................................................................1, 8

# STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this Court:  *Calcutt v. FDIC*, 598 U.S. 623 (2023); *Lessors of Abchakan Village v. Secretary of Defense*, 137 F.4th 1301 (Fed. Cir. 2025); *SEC v. Chenery Corp.*, 332 U.S. 194 (1947).

Based on my professional judgment, I believe that this appeal requires answers to one or more following precedent-setting questions of exceptional importance:

(i)     Whether, for purposes of 19 U.S.C. §1337(a)(3)(B), research and development investments made in a concededly non-patent-practicing device can be considered in determining whether a complainant has established a "significant employment of labor or capital" "with respect to" patent-practicing devices.

(ii)    Whether, for purposes of 19 U.S.C. §1337(a)(2), a complainant can establish that an "industry in the United States [] relating to the articles protected by [a] patent … exists" when it fails to identify any device that actually practices the patent or make a showing that the physical devices produced are "representative" of the article.

/s/  Mark D. Selwyn
MARK D. SELWYN

- 1 -

## POINTS OVERLOOKED OR MISAPPREHENDED BY THE PANEL

(1)    The panel's opinion erred in reaching the following holdings:

    a.    The physical devices complainants produced to satisfy the domestic industry's technical prong were "representative" of an unproduced patent-practicing article. Op.14-15.

    b.    The standalone Wings and Circle devices were "components" that were "specifically tailored" for use in the later-in-time RevA and RevD devices. Op.22-23.

    c.    The Lumidigm prior art does not "disclose measuring blood oxygen saturation at all, anywhere on the body." Op.33-34 (emphasis omitted).

    d.    In rejecting one of Apple's written description arguments, the ALJ "credited" complainants' expert and "noted additional places in the specification" that supported complainants' position beyond a single sentence. Op.30.

(2)    The panel's opinion misapprehends the text of 19 U.S.C. §1337(a)(3) by holding that subsection (B) can be satisfied by research and development expenditures. Op.19-24.

/s/ Mark D. Selwyn
MARK D. SELWYN

- 2 -

**INTRODUCTION**

"It is a simple but fundamental rule of administrative law that reviewing courts must judge the propriety of [agency] action solely by the grounds invoked by the agency." *Calcutt v. FDIC*, 598 U.S. 623, 624 (2023). An appellate decision that "affirm[s] [an agency's ruling] … based on a legal rationale different from the one adopted by the [agency]" is subject to summary reversal by the Supreme Court. *Id.* at 624-625.

The panel's decision here conducted precisely the type of "*de novo*" inquiry into the agency record that the Supreme Court forbids. *Id.* at 629. The panel then applied its own interpretation of the facts to decide two legal questions of first impression regarding the Commission's domestic industry requirement. In doing so, the panel's decision improperly erodes the only statutory provision that ensures the Commission remains "fundamentally a trade forum, not an intellectual property forum." *John Mezzalingua Associates, Inc. v. ITC*, 660 F.3d 1322, 1328 (Fed. Cir. 2011). And because the panel relies on facts that the agency never actually found, the decision is unclear as to how its new tests should be applied going forward. Accordingly, rehearing is warranted.

- 3 -

## BACKGROUND

### A.    The Statutory Scheme

Section 337 of the Tarriff Act of 1930 gives the ITC the power to ban the "importation of articles that infringe a valid and enforceable United States patent." *Mezzalingua*, 660 F.3d at 1324. The Commission is an attractive forum for patentees because the agency can issue an injunction without the showing of irreparable harm required in Article III proceedings, *Spansion v. ITC*, 629 F.3d 1331, 1358-1359 (Fed. Cir. 2010), and because the Commission's rulings on patent issues such as invalidity have no preclusive effect elsewhere, *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996). The only statutory barrier preventing a patentee with a weak case from trying its luck in the ITC is Section 337's domestic industry requirement. *See* 19 U.S.C. §§1337(a)(2)-(3). The requirement has two sub-parts—the technical prong and the economic prong—which (outside of rare circumstances not present here) must be satisfied by evidence that existed at the time of the complaint. Op.8.

Under the technical prong, "the complainant must establish that it practices at least one claim of the asserted patent," meaning the patentee must identify "actual articles protected by the patent.'" *Broadcom Corp. v. ITC*, 28 F.4th 240, 249-250 (Fed. Cir. 2022). Under the economic prong, "the complaint must

demonstrate that its investment in the protected article is significant or substantial."

*Id.* at 250.

## B.    Apple's And Masimo's Products

Apple launched its Series 6 Apple Watch in September 2020—its first to include a feature measuring the user's blood oxygen levels. *See* Op. 5; Appx404-405. Masimo filed an ITC complaint in July 2021 "hop[ing]," in the words of its former CEO, "that the ITC would … block the importation and sale of" Apple Watch and buy time for Masimo to "launch" its own competing watch (the W1). Dkt. 25-2 at 14-15.

Masimo, however, had a serious jurisdictional problem. It could not rely on its W1 watch to establish a domestic industry because that device did not exist until months after filing the complaint. Appx64.[1]

Masimo's ITC complaint accordingly relied on CAD drawings and an offer to make a "Masimo Watch" "sample … available upon request." Appx14129; *see also* Appx3718-3727(¶¶47, 54, 61, 68). During discovery, Masimo produced dozens of different physical objects it claimed were the purported patent-practicing article(s). Appx6853-6854; Appx6943-6948. Masimo ultimately narrowed its case to five such prototypes that it contended practiced the two patents in this

---

[1] The W1 was never ultimately sold "in the United States in any meaningful quantity." Appx27241.

**CONFIDENTIAL MATERIAL FILED UNDER SEAL REDACTED**

appeal—U.S. Patent Nos. 10,912,502 and 10,945,648 ("Poeze Patents"). In the ALJ's words, Masimo's "asserted pre-complaint domestic industry products are the RevA (CPX-0052C), RevD (CPX-0058C), and RevE prototypes (CPX-0019C, CPX-0020C, CPX-0065C)." Appx64. Masimo also submitted two items—Wings and Circle—it claimed practiced a patent (U.S. Patent No. 10,687,745) that the agency later held not infringed. Appx204; Appx341. All seven items are below, with Wings in the bottom left and Circle in the bottom right:



*See* C.A. Dkt. 57 (Masimo Br.) at 26 (Rev images); C.A. Dkt. 53 (Apple Br.) at 15 (Wings and Circle images).

The term "Rev" refers to different phases of Masimo's project to develop a watch.  For example, RevA devices could (purportedly) calculate blood oxygen without being connected to another device, and RevD devices added a display.  C.A. Dkt. 58 (ITC Br.) at 3.  It is undisputed there were multiple versions of sensor design within each "Rev."  *See* Apple Br.35-36.  The (relevant) agency-level state of play is summarized below:

| Prototypes | D.I. Patent(s) | Patent(s) Held Infringed? |
| --- | --- | --- |
| RevA, RevD, 3 RevEs | Poeze Patents | Yes |
| Wing and Circle | Patent No. 10,687,745 | No |

## C.    The Agency's Ruling

The ALJ found the technical prong was satisfied because the five Rev devices were "consistent" with the existence of an article that practiced the Poeze Patents before Masimo's complaint was filed.  *E.g.*, Appx89 n.22; *see* Appx66-67 & n.16.  The ALJ did not, however, find any of the five produced devices practiced a key limitation of the Poeze Patents—measuring blood oxygen—or were "representative" of an unproduced device that did.

The ALJ found the economic prong satisfied because Masimo had shown investment of "significant employment of labor or capital."  19 U.S.C. §1337(a)(3)(B); *see* Appx323-324.  This finding rested on "Masimo's aggregate investments" in "research and development" for the Wings and Circle devices (which undisputedly do not practice the Poeze Patents) and the Rev devices.  Appx307-308.  The ALJ concluded Wings and Circle could be relied upon because they were early "iterations" of a "continuous design and development effort" that ultimately resulted in the Rev prototypes.  Appx307-308.  The ALJ did not find Wings or Circle were a "component" of the Rev devices.

The ALJ also found the Poeze Patents were not invalid.  As to obviousness, the ALJ concluded the key prior art reference (Lumidigm) did not satisfy the claims' requirements of a "user-worn" device configured to measure the user's oxygen saturation.  Appx118-123.  While the ALJ expressly found that Lumidigm "contemplates blood oxygen measurement in a ***wristwatch***," Appx119-120; *see* Apple Br.48, the ALJ concluded a skilled artisan would have had difficulty measuring blood oxygen "at the wrist," Appx122.[2]

The ALJ also rejected Apple's argument that the Poeze patents were invalid for lack of written description.  Appx163-164.  Specifically, the ALJ found the

---

[2] Emphasis added and internal quotation marks omitted unless noted.

- 8 -

claimed combination (i.e., (1) sets of LEDs, (2) four photodiodes, and (3) a protrusion with *inter alia* a plurality of "openings") was adequately disclosed. Appx164. Although the ALJ spent several pages summarizing the parties' arguments and the testimony of Masimo's expert, *see* Appx161-164, her reasoning occupied just one page of her approximately 340-page opinion, Appx164.

Because the Commission did not review any of the ALJ's specific holdings summarized above, those "unreviewed parts" became "Commission determinations." *Microsoft Corp. v. ITC*, 731 F.3d 1354, 1358 (Fed. Cir. 2013).[3]

## D.    Appellate Briefing And Oral Argument

In front of this Court, the Commission's attorneys argued for the first time that the five "Rev" prototypes the ALJ had considered were merely "representative physical exhibits" of a single, different design. ITC Br.4, 25-26; *see also id.* 20-21. And at oral argument, the Commission's attorney invoked *Motorola Mobility, LLC v. ITC*, 737 F.3d 1345, 1351 (Fed. Cir. 2013), to argue that investments in Wings and Circle could be considered even if those devices themselves did not practice the Poeze Patents because Wings and Circle were "important to and related to" the RevA, RevD, and RevE devices. *See* Oral Arg.20:40-21:35.

---

[3] The panel's decision erroneously states that the Commission "agreed with the ALJ" "[o]n review"—or "affirmed"—that Masimo's complaint alleged that numerous "Masimo Watch products" satisfied the article requirement. Op.10-11, 13-14. The lone page the panel relies upon (Appx373) comes from the Commission's "BACKGROUND" section summary of the "Accused Products."

- 9 -

Beyond the domestic industry issues, Masimo's briefing argued the obviousness ruling could be affirmed because "Lumidigm does not disclose measuring oxygen saturation at all," Masimo Br.46, even though the ALJ had expressly found that Lumidigm describes a "blood oxygen measurement," *e.g.*, Appx118-120; *see also* ITC Br.37 (acknowledging Lumidigm's "disclosure of a biometric sensor that may be used to measure oxygen saturation"); Appx70418 (Lumidigm). Both Masimo and the Commission also urged the panel to affirm the agency's written description ruling based on points that appeared (at best) only in the agency's summary of evidence. Appx162-163; *see* ITC Br.49-53; Masimo Br.54-57.

Apple's reply identified numerous places where Masimo and the Commission invited the Court to violate *Chenery*. *E.g.*, Apple Reply 4, 5-6, 26-27; *see also* Oral Arg.23:30-24:30 (questioning on *Chenery*).

### E.    The Panel's Ruling

The panel's decision adopted Masimo's and the Commission's attorneys' new arguments without addressing or citing *Chenery*. As to the technical prong, the panel decision holds the ALJ treated the five "Rev" prototypes "as representative embodiments of the broader domestic industry article they [were] found to reflect." Op.15. As to the economic prong, the decision states "Masimo's investments in the development of the Circle and Wings sensors were investments

- 10 -

'directed to significant components, specifically tailored for use in' the Masimo Watch." Op.22-23 (quoting *Motorola*, 737 F.3d at 1351).  Finally, as to invalidity, the panel (1) adopts Masimo's (erroneous) obviousness position that "Lumidigm fails to disclose measuring blood oxygen saturation ***at all, anywhere on the body***," Op.33 (emphasis in original), and (2) concludes the ALJ's written description ruling was supported by substantial evidence by finding that the ALJ had "credited Masimo's expert" and citing to material discussed only in the ALJ's summary of Masimo's arguments, Op.30.

## REASONS FOR GRANTING REHEARING

I.     EN BANC REHEARING IS WARRANTED TO ADDRESS TWO NOVEL QUESTIONS REGARDING THE DOMESTIC INDUSTRY REQUIREMENT

A.     **The Economic Prong's "Significant Investment In Labor Or Capital" Requirement Cannot Be Read To Encompass Research And Development Expenditures For A Standalone, Non-Patent-Practicing Device**

1.     **Section 337(a)(3)(B) cannot be read to cover research and development costs**

The panel's decision is the first from this Court to hold research and development costs qualify as "significant employment of labor or capital" with "respect to the articles protected by the patent." Op.19-24.  This approach is inconsistent with the text of Section 337(a)(3), as the Commission recently admitted in its en banc petition in *Lashify v. ITC*.

- 11 -

There are three "bases for finding the economic prong satisfied." Op.19. The patentee must show that "with respect to the articles protected by the patent," there has been:

> (A) Significant investment in plant and equipment;
> (B) Significant employment of labor or capital; or
> (C) Substantial investment in [the patent's] exploitations, including engineering, research and development, and licensing.

*Id*. at 19-20.

Here, the agency found only that Masimo "had satisfied subsection (B)" and that subsection (B) was satisfied by "Masimo's investments in research and development for the Masimo Watch." Op.19 (summarizing ALJ's finding). The agency did ***not*** make a finding under subsection (C), the only statutory provision that mentions "research and development." Indeed, Masimo has never argued it satisfied that subsection.

The panel nonetheless affirmed the ALJ's ruling at least in part because it was "consistent with" subsection (C)'s coverage of "substantial investment in … engineering, research and development." Op.22; *see also* Op.23. This reliance on subsection (C) was legal error. This Court lacks the "power[] to affirm [an] administrative action by substituting what it considers to be a more adequate or proper basis." *Calcutt*, 598 U.S. at 629.

Nor can the error be cured by affirming the agency's subsection (B) ruling. As a matter of statutory construction, the general term "labor or capital" that

- 12 -

appears in subsection (B) cannot plausibly be read to cover the specific examples enumerated in subsection (C) such as "research and development." Had "Congress intended" for research and development to be encompassed within subsection (B)'s "labor or capital" provision, "it would have said so"—as it did in subsection (C). *Cf. State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, 580 U.S. 26, 34 (2016).

In addition, reading subsection (B) to cover "research and development" would render subsection (C)'s more narrowly tailored language entirely superfluous, violating "a cardinal principle of statutory construction." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Research and development expenditures made as part of a "substantial exploitation" of the patent under subsection (C) would necessarily also constitute expenditures made "***with respect to*** the articles protected by the patent" under subsection (B). The "canon against surplusage" is at its "strongest" where, as here, "an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Revenue Corp.*, 568 U.S. 371, 386 (2013).

Even the Commission agrees that subsection (B) does not encompass research and development activities. As the Commission explained to this Court last year:

> If Congress had understood Sections 337(a)(3)(A) and (B) to include ***all*** "plant and equipment" and "labor or capital," there would have

- 13 -

been no reason in 1988 for Congress to add section 337(a)(3)(C), which credits … ["]research and development[."] … [S]ections 337(a)(3)(A) and (B) cannot include **all** activities; otherwise, section 337(a)(3)(C) is superfluous.

Pet. 9-10, *Lashify, Inc. v. ITC*, No. 23-1245 (Fed. Cir. May 21, 2025), ECF No. 117.

The panel's decision glossed over the plain statutory text, apparently based on this Court's statement in *Lashify, Inc. v. ITC* that subsections (B) and (C) are "potentially overlapping." Op.19. But *Lashify* did not address the specific question here regarding research and development expenses—it held only that subsection (B) encompassed expenses "related to warehousing, distribution, and quality control, as well as [to] sales and marketing expenses." 130 F.4th 948, 963 (Fed. Cir. 2025). If *Lashify* is read more broadly, it conflicts with the clear statutory text and should be confined or overruled by the en banc Court.

### 2. Subsection 337(a)(3)(B) cannot be read to cover expenditures made when developing a standalone device that does not practice the patent

Even if subsection (B) could cover research and development expenses, nothing in the statutory text or logic permits it to cover those expenses when applied to distinct items that do not practice the patent.

Here, it is undisputed that (1) the Wings and Circle devices were submitted to establish a domestic industry for a patent not at issue on appeal; (2) Wings and Circle do not practice the Poeze Patents; and (3) Masimo failed to disaggregate the

- 14 -

Wings/Circle research and development expenses from the expenses for the (purportedly) patent-practicing RevA, RevD, and RevEs. *E.g.*, *supra* pp.6, 8. Under this Court's precedent, that should have been the end of the inquiry. Section 337(a)(3) requires investment "with respect to the articles protected by the patent"—a phrase this Court has previously explained requires the patentee to "demonstrate that its investment *in* the protected article is significant or substantial." *Broadcom*, 28 F.4th at 250. Thus, "in cases in which the complainant's products … each practice different patents, the complainant would need to establish separate domestic industries for each of those different groups of products." *Zircon Corp. v. ITC*, 101 F.4th 817, 824 (Fed. Cir. 2024).

The panel's ruling brushed aside decisions like *Zircon* based on a point that the Commission's attorneys raised for the first time at oral argument, relying on *Motorola* to hold that the Wings and Circle devices can be counted because they are purportedly "significant components" of the supposedly patent-practicing RevA and RevD devices. Op.22-23 (quoting *Motorola*, 737 F.3d at 1351). To be sure, the *Motorola* rule complies with the statute's language, because an "investment directed to a specifically tailored, significant aspect *of the article* is still directed to the article." *Motorola*, 737 F.3d at 1351. But in *Motorola*, the agency itself "rejected the assertion that [the patentee] was relying on separate products for the technical and economic prongs"—the issue was instead whether to

- 15 -

count investments made in an operating system "specifically tailored" to be a part of a patent-practicing mobile device. *Id*. Here, in contrast, Wings and Circle are separate, standalone items with similar functionality to the Rev items. *See supra* p.6. The agency record lacks any finding—and Masimo did not argue—that Wings and Circle are ***component*** parts of the Rev devices.

Because the Commission did not find Wings and Circle are components, the Commission's ruling cannot be affirmed on that ground under *Chenery*. Even beyond the *Chenery* problem, the panel's approach diverges from the statutory text in a manner that will transform the economic prong from a gate into an open door because every product or prototype builds on prior work. If the panel's decision stands, then the Commission is simply another intellectual property tribunal—one where a patentee can try its luck with no estoppel repercussions in any other forum.

**B.　The Panel Legally Erred In Holding The Technical Prong Can Be Satisfied Without Showing That The Physical Devices Relied Upon Are "Representative" Of The Claimed Article**

The panel's decision also committed a wide-reaching error by holding Masimo established that an "industry in the United States[] relating to the articles protected by the patent … exists" under Section 337(a)(2) because Masimo identified five physical prototypes that it claimed (for the first time on appeal) were "representative" of a patent-practicing article. Op.5, 14-15, 17.

- 16 -

The panel's holding that an ITC complainant can secure an injunction without identifying a specific physical article that actually practices the patent, *e.g.*, Op.17, is divorced from the Tarriff Act's text and this Court's precedent. The statutory term "articles" refers to "material things," *ClearCorrect Operating, LLC v. ITC*, 810 F.3d 1283, 1286, 1291-1293 (Fed. Cir. 2015), and a patentee must show "sufficient proof of articles that were actually protected by the patent," *Microsoft*, 731 F.3d at 1361. Logically, a patentee cannot meet that burden without at some point presenting the agency with a physical item that actually practices the patent.

Regardless, the panel's decision violates *Chenery* by holding the five specific prototypes at issue (one RevA, one RevD, and three RevE devices) ***were*** in fact "representative" of a different, unproduced item referred to as the "Masimo Watch." *E.g.*, Op.15, 17. The agency itself never made a finding of "representativeness." In fact, the word "representative" never appears in the relevant section of the agency's decisions—likely because, as Apple's reply brief explained, Masimo failed to advance the argument in front of the agency. *See* Apple Reply 5-6.

Although Apple identified this *Chenery* problem, the panel decision overlooks it. Instead, the panel seems to rely on the ALJ's failure to expressly find that RevA, RevD, and the RevEs were ***not*** representative. In particular, the panel

- 17 -

states that the ALJ "referred broadly to the RevA, RevD, and RevE devices, *without suggesting* that her analysis was limited to" the five physical prototypes. *E.g.*, Op.14 (citing Appx87). That the panel did not identify a single representativeness finding in the hundreds of pages that make up the agency's decisions, *see* Appx1-483, is a tacit acknowledgment that the "agency has not first had a chance to address the [representativeness] question" facing this Court, *Calcutt*, 598 U.S. at 629. Nearly every relevant page in the ALJ's decision expressly cites the five physical prototypes' exhibit numbers when addressing the relevant articles. *E.g.*, Appx64 (discussing "Masimo's asserted pre-complaint domestic industry products"); *see also* Appx10; Appx60; Appx65; Appx68-70; Appx74; Appx83.

This *Chenery* error will have compounding effects across all future ITC investigations where a complaint depends on a prototype. Litigants in those cases will be unable to look to the agency's ruling in this case for guidance, and the panel decision's statement that "[n]othing" in a statute or a regulation *bars* a finding of representativeness, Op.15, raises more questions than it answers. For example, what factors should be considered in assessing representativeness? Does the complainant have the burden of production and persuasion on that issue? Are there any circumstances under which a representativeness finding is categorically inappropriate?

- 18 -

As things stand, the answer to these questions will turn on the views of any given ALJ.  This, in turn, will lead to the prospect of different outcomes at the agency level and a multitude of appeals seeking clarification of the scope of the panel decision.  The better course (and the course *Chenery* requires) is for this Court to vacate the existing injunction and remand the case back to the Commission to allow the agency to develop its standards for representativeness—after briefing by the parties.

## II.    REHEARING IS WARRANTED TO CORRECT THE PANEL DECISION'S MULTIPLE *CHENERY* ERRORS

At minimum, rehearing should be granted to correct the panel decision's failures to abide by *Chenery*.  *Cf. Apple, Inc. v. Samsung Electronics Co.*, 839 F.3d 1034, 1039 (Fed. Cir. 2016) (en banc).  Here, the panel's decision violated *Chenery* in at least four ways—i.e., in ruling on (1) the technical prong, (2) the economic prong, (3) obviousness, and (4) written description.

The *Chenery* errors related to the domestic industry prong are discussed in detail above.  But the invalidity errors are also significant.  The panel's primary basis for affirming the agency's obviousness ruling was that the Lumidigm prior art "fails to disclose measuring blood oxygen saturation ***at all, anywhere on the body***." Op.33 (emphasis in original); *supra* p.11.  The ALJ, however, expressly found Lumidigm describes a "blood oxygen measurement," Appx119-120, and the Commission's merits briefing agreed, *supra* p.10.  As to written description, the

- 19 -

panel's opinion relied on the ALJ's ***summary*** of Masimo's arguments in holding that the ALJ had "credited" testimony from Masimo's expert and had "noted additional places in the specification" supporting Masimo's position beyond the lone sentence Apple spotlighted in its briefing. *Compare* Op.30 *with* Appx163. Put slightly differently, the panel affirmed based on those of Masimo's arguments it found persuasive in the first instance—not on the rationale the agency actually provided on Appx164.

These errors were potentially outcome determinative, as the Commission lacked the authority to enjoin Apple's products in the absence of a domestic industry and a valid patent. Regardless, there is no harmless error exception to *Chenery* except in "narrow circumstances"—e.g., where the agency "was ***required*** to take a particular action." *Calcutt*, 598 U.S. at 629-630; *accord Lessors of Abchakan Village v. Secretary of Defense*, 137 F.4th 1301, 1316 (Fed. Cir. 2025) (same). Here, the decision rested on the panel's *de novo* review of the record on myriad issues where the agency came to a different result or simply was silent. Because the agency did not "rely on [the panel opinion's] ground[s] as a basis for its decision," *Chenery* "bars [this Court] from affirming on those grounds." *Lessors*, 137 F.4th at 1316.

## CONCLUSION

Rehearing should be granted.

Respectfully submitted,

/s/ Mark D. Selwyn

| | |
|---|---|
| JOSEPH J. MUELLER | MARK D. SELWYN |
| SARAH R. FRAZIER | THOMAS G. SPRANKLING |
| WILMER CUTLER PICKERING | WILMER CUTLER PICKERING |
|    HALE AND DORR LLP |    HALE AND DORR LLP |
| 60 State Street | 2600 El Camino Real, Suite 400 |
| Boston, MA  02109 | Palo Alto, CA  94306 |
| (617) 526-6000 | (650) 858-6000 |

JOSEPH J. MUELLER
SARAH R. FRAZIER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

DAVID P. YIN
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC  20037
(202) 663-6000

MARK D. SELWYN
THOMAS G. SPRANKLING
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

DEREK GOSMA
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Avenue, Suite 2400
Los Angeles, CA  90071
(213) 443-5300

*Attorneys for Appellant Apple Inc.*

May 4, 2026

- 21 -

# OPINION ADDENDUM
### (Pursuant to Fed. Cir. R. 40(d)(1))

# United States Court of Appeals
# for the Federal Circuit

---

**APPLE INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**MASIMO CORPORATION, CERCACOR
LABORATORIES, INC.,**
*Intervenors*

---

2024-1285

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1276.

---

Decided:  March 19, 2026

---

JOSEPH J. MUELLER, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, argued for appellant.  Also represented by SARAH R. FRAZIER; DEREK ANTHONY GOSMA, Los Angeles, CA; MARK D. SELWYN, THOMAS GREGORY SPRANKLING, Palo Alto, CA; DAVID P. YIN, Washington, DC.

RONALD TRAUD, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee.  Also represented by MICHELLE W.

KLANCNIK, MARGARET D. MACDONALD, HOUDA MORAD.

JOSEPH R. RE, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, argued for intervenors. Also represented by BRIAN CHRISTOPHER CLAASSEN, STEPHEN C. JENSEN, SHEILA N. SWAROOP; JONATHAN EDWARD BACHAND, Washington, DC.

—————————

Before LOURIE, REYNA, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

In September 2020, Apple Inc. ("Apple") launched the Apple Watch Series 6 ("Apple Watch"), which included a feature capable of estimating the wearer's blood oxygenation level. Nine months later, in June 2021, Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Masimo") filed a complaint with the United States International Trade Commission ("Commission"), under § 337 of the Tariff Act of 1930 as amended ("Tariff Act"), alleging that Apple's importation and sale of the Apple Watch infringed several Masimo patents covering wearable blood oxygen measurement devices. In its complaint, Masimo charged that Apple was unlawfully engaged in unfair trade practices in violation of the Tariff Act. The Commission instituted an investigation and found that Masimo proved Apple did, in fact, violate § 337 by importing, selling, and offering for sale Apple Watch models that incorporated the blood oxygen functionality covered by Masimo's patents. Accordingly, the Commission issued a limited exclusion order ("LEO") barring importation of the infringing Apple Watches. Apple now appeals. Finding no error in the Commission's domestic industry determination, its validity rulings, or its infringement findings, we affirm.

# I

## A

Masimo was founded in California in 1989 with a goal of addressing persistent problems encountered by conventional noninvasive pulse oximeters used to measure blood oxygenation levels, including inaccurate and false readings, particularly under clinical conditions. In 1995, Masimo introduced its motion- and low-perfusion-tolerant Signal Extraction Technology ("Masimo SET"), which substantially reduced false alarms caused by certain conditions prevalent in clinical settings, such as patient movement or poor circulation.

Masimo has obtained multiple patents for the Masimo SET technology and is the assignee of U.S. Patent Nos. 10,912,502 (the "'502 patent") and 10,945,648 (the "'648 patent"). Because both the '502 and '648 patents name Jeroen Poeze as their first named inventor, we will refer to them collectively throughout this opinion as the "Poeze Patents." The Poeze Patents claim priority to an application filed on July 3, 2008, and they share a title, "User-Worn Device for Noninvasively Measuring a Physiological Parameter of a User." J.A. 366. Generally, the Poeze Patents cover wearable technology that measures user physiological metrics by way of optical emitters and photodetection. These devices use light-emitting diodes ("LEDs") to emit light at specific wavelengths into tissue at a measurement site, such as the fingertip. Photodetectors on the device then measure the returned intensity of these optical emissions, which is attenuated by the wearer's tissue and blood. The level of attenuation is then used to determine the desired physiological parameter of the device wearer.

On September 24, 2020, Masimo filed with the U.S. Patent and Trademark Office the applications that later became the Poeze Patents. Their claims share substantially similar limitations, including that the covered devices

must be "user-worn" and utilize transmissive windows that extend across or exist within a convex protrusion of the device. Claim 19 of the '502 patent, from which asserted claim 22 depends, is representative for purposes of the issues presented in this appeal:

> *A user-worn device* configured to non-invasively measure an oxygen saturation of a user, the user-worn device comprising:
>
>> a plurality of emitters configured to emit light, each of the emitters comprising at least two light emitting diodes (LEDs);
>>
>> four photodiodes arranged within the user-worn device and configured to receive light after at least a portion of the light has been attenuated by tissue of the user;
>>
>> *a protrusion comprising a convex surface including separate openings extending through the protrusion* and lined with opaque material, each opening positioned over a different one associated with each of the four photodiodes, the opaque material configured to reduce an amount of light reaching the photodiodes without being attenuated by the tissue;
>>
>> *optically transparent material within each of the openings*; and
>>
>> one or more processors configured to receive one or more signals from at least one of the four photodiodes and output measurements responsive to the one or more signals, the measurements indicative of the oxygen saturation of the user.

J.A. 704 at 46:22-45 (emphasis added).

Figure 3B of the '502 patent, reproduced below, depicts an illustrative embodiment of a claimed pulse oximeter:



FIG. 3B

J.A. 623.

## B

Apple released the accused version of the Apple Watch on September 15, 2020. It contained a feature Apple called the "Blood Oxygen sensor," which "employs LEDs, along with photodiodes" to measure the wearer's "blood oxygen levels." J.A. 70359.

On June 30, 2021, Masimo filed its complaint against Apple with the Commission, which it amended on July 7, 2021. Masimo's amended complaint alleged that the Apple Watch infringed various claims of several Masimo patents, including the Poeze Patents, and sought an exclusion order pursuant to § 337 of the Tariff Act prohibiting Apple from importing the Apple Watch. Section 337 makes it "unlawful to import articles that infringe a valid and enforceable United States patent if 'an industry in the United States, relating to the articles protected by the patent . . . exists or is in the process of being established.'" *Motiva LLC v. Int'l Trade Comm'n*, 716 F.3d 596,

597 (Fed. Cir. 2013) (quoting 19 U.S.C. § 1337(a)(2)).  Upon finding a § 337 violation, the Commission is empowered to "declare[] certain activities related to importation to be unlawful trade acts and . . . to grant prospective relief," including prohibiting importation of infringing articles, when appropriate.  *ClearCorrect Operating, LLC v. Int'l Trade Comm'n*, 810 F.3d 1283, 1289 (Fed. Cir. 2015) (internal quotation marks omitted).

The Commission instituted an investigation to determine whether Masimo was entitled to such relief.  In June 2022, an administrative law judge ("ALJ") held a five-day hearing, during which she heard testimony from 22 live witnesses, and after which she issued a 342-page opinion, setting out her determinations that: (i) Masimo established the existence of a domestic industry relating to the Poeze Patent claims it was asserting against Apple; (ii) the Apple Watch infringed some of those claims; (iii) some of the infringed claims had not been proven invalid for lack of adequate written description or obviousness; and (iv) Masimo was not estopped by prosecution history laches from enforcing its patents.  Ultimately, the ALJ held that Apple violated § 337 because the Apple Watch infringed claims 24 and 30 of the '648 patent, claims practiced by Masimo that Apple failed to prove were invalid.

Apple and Masimo then cross-petitioned for Commission review of the ALJ's ruling, and the Commission granted such review in part.  On October 26, 2023, the Commission issued its final determination, affirming the ALJ's finding of a § 337 violation as to claims 24 and 30 of the '648 patent and reversing her determination that claim 12 of the '648 patent and claims 22 and 28 of the '502 patent were invalid for lack of adequate written description.  However, the Commission also found that no domestic industry existed as to claim 22 of the '502 patent.  Based on these rulings, the Commission's overall finding was that Apple violated § 337 with respect to four claims that had not been shown to be invalid: claims 12, 24, and 30 of the '648 patent

and claim 28 of the '502 patent.[1]  As relief, the Commission issued a LEO barring importation of the infringing Apple Watches.

Apple timely appealed from the Commission's judgment, and we granted Masimo leave to intervene in support of the Commission.  We have jurisdiction under 28 U.S.C. § 1295(a)(6).[2]

## II

"Our review of the Commission's final determination of a Section 337 violation is governed by the standards of the Administrative Procedure Act" ("APA").  *Mayborn Grp., Ltd. v. Int'l Trade Comm'n*, 965 F.3d 1350, 1353 (Fed. Cir. 2020).  "The Commission's factual findings are reviewed for substantial evidence, and legal determinations are reviewed *de novo.*" *Broadcom Corp. v. Int'l Trade Comm'n*, 28 F.4th 240, 249 (Fed. Cir. 2022); *see also* 5 U.S.C. § 706.  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to

---

[1] The Chairman of the Commission dissented from the holding that claim 28 of the '502 patent and claim 12 of the '648 patent were not proven invalid due to lack of adequate written description.

[2] On November 14, 2025, during the pendency of this appeal, the Commission instituted a combined modification and enforcement proceeding ("ancillary proceeding") to consider whether a redesigned version of the Apple Watch should also be barred from importation under the LEO at issue in this appeal.  The parties agree that the LEO we are reviewing remains in effect during the pendency of that ancillary proceeding.  While Apple has argued to the Commission that it lacks jurisdiction to initiate the ancillary proceeding during the pendency of this appeal, Apple has not sought any relief from us in connection with the ancillary proceeding.

support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 227 (1938). We "must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion." *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (internal quotation marks omitted). Determinations by the ALJ not reviewed by the Commission become determinations of the Commission for purposes of appeal. *See Microsoft Corp. v. Int'l Trade Comm'n*, 731 F.3d 1354, 1358 (Fed. Cir. 2013). Hence, except when necessary to distinguish the ALJ's findings from the Commission's, this opinion refers to the ALJ's findings as the Commission's own findings.

## III

Apple first argues that the Commission erroneously concluded that Masimo demonstrated a domestic industry as is required to establish a violation of § 337. We disagree with Apple.

## A

In order to demonstrate that an unlawful trade act has occurred in violation of § 337, a complainant must show that "the respondents named in the Commission proceeding [are] importing 'articles that . . . infringe' a United States patent" *and* further show that "there [is] (already or in process of establishment) an industry in the United States that relates to [those] articles." *Lashify v. Int'l Trade Comm'n*, 130 F.4th 948, 954 (Fed. Cir. 2025). This is the Tariff Act's domestic industry requirement, and it consists of two prongs: the economic prong, which requires that there be an industry in the United States relating to the patent, and the technical prong, which requires that the industry relate to articles protected by the patent. *Id.* The domestic industry requirement is assessed based on the status of the alleged industry at the time of the filing of a complaint with the Commission. *See Philip Morris Prods. S.A. v. Int'l Trade Comm'n,*

63 F.4th 1328, 1341 n.4 (Fed. Cir. 2023) ("[T]he filing date of the complaint is the relevant date at which to determine if the domestic industry requirement' is satisfied.") (internal quotation marks omitted). "The question of whether the domestic industry requirement is satisfied presents issues of both law and fact." *Motiva*, 716 F.3d at 600.

Apple's challenge to the Commission's domestic industry determination includes attacks on its findings with respect to both the technical prong and the economic prong. We address both below.

1

a

In order to satisfy the technical prong of the domestic industry requirement, "an actual article protected by the patent is needed." *Broadcom Corp.*, 28 F.4th at 250. For purposes of § 337, "Congress's unambiguously expressed intent was for 'articles' to mean 'material things.'" *ClearCorrect*, 810 F.3d at 1294. In a § 337 proceeding, then, the complainant must show there is a domestic industry article that actually practices at least one claim of an asserted patent. *See Microsoft*, 731 F.3d at 1361; *Osram GmbH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1359 (Fed. Cir. 2007) ("The domestic product, to meet the technical prong test, Section 337(a)(2), must be covered by the asserted claims."). Hence, "[f]or the technical prong, the question is essentially [the] same as that for infringement, i.e., a comparison of domestic products to the asserted claims." *Lashify*, 130 F.4th at 954 (internal quotation marks omitted).

In its governing amended complaint filed on July 7, 2021,[3] Masimo "identif[ied] a 'Masimo Watch' . . . as

---

[3] The Commission granted Masimo a filing date of July 12, 2021, based on its filing of a "Confidential

the alleged domestic industry product" for the asserted patents at issue in this appeal. J.A. 14129. Masimo further alleged that a "confidential sample of a Masimo Watch that embodies the claims of the [asserted patents] is available upon request," attaching to its complaint exhibits showing digital renderings and a photograph of the purported Masimo Watch. *Id.* at 14129-30. The ALJ found that this identification did not refer to a singular product but, instead, that "multiple . . . physical [domestic industry] items existed at the time of the Amended Complaint." J.A. 14135; *see also* J.A. 14138. The ALJ rejected Apple's contention that the physical items produced by Masimo lacked the firmware necessary to determine oxygen saturation and pulse rate, as required by the asserted claims, crediting instead the testimony of Masimo's witness, Ammar Al-Ali – who oversees technology development at Masimo – regarding testing of blood oxygen saturation performed on a version of the Masimo Watch *before* the complaint was filed. J.A. 10, 88-89 (citing J.A. 40369-71 at 276:17-278:13). As the ALJ observed, this testing could not have occurred unless the tested device existed and contained the required firmware. From the totality of evidence, the ALJ found that Masimo had proven by a preponderance of the evidence that articles covered by the asserted claims existed at the time of the complaint, and therefore the article requirement of the technical prong of the domestic industry analysis was satisfied.

On review, the Commission agreed with the ALJ that the complaint did not specify a singular "Masimo Watch" as the pertinent domestic industry product. Rather, the Commission determined that, with respect to the Poeze Patent claims asserted here, "[Masimo] rel[ied] on [its]

---

Amendment to the [July 7, 2021] Public Complaint and Exhibits" on that date. J.A. 361. This determination is not at issue in this appeal.

'Masimo Watch' products" "includ[ing] certain prototypes identified as the 'Circle Sensor' (CPX-0021C), the 'Wings Sensor' (CPX-0029C), the 'RevA Sensor' (CPX-0052C), the 'RevD Sensor' (CPX-0058C), the 'RevE Sensors' (CPX-0019C, CPX-0020C, CPX-0065C) . . . and a product identified as the 'W1 Watch' (CPX-0146C)."[4] J.A. 373. The Commission observed that the Circle, Wings, RevA, RevD, and RevE sensors "were developed as part of an iterative design process that resulted in the W1 Watch, which was not completed until after the Complaint was filed." J.A. 373. Ultimately, the Commission affirmed the ALJ's determination that Masimo satisfied the technical prong of the domestic industry requirement by showing "by a preponderance of the evidence that the RevA, RevD, and RevE devices practice[d] claims 12, 24 and 30 of the '648 patent, and that the RevD and RevE devices also practiced claim 28 of the '502 patent." J.A. 87; *see also* J.A. 425-26 (citing J.A. 341).

In contesting the Commission's finding, Apple critiques the Commission for purportedly relying on a "hypothetical" Masimo Watch, rather than an actual article when evaluating the technical prong, emphasizing that a hypothetical device cannot satisfy the domestic industry requirement. Apple's contention, however, rests on three flawed premises, as we now explain.

i

First, Apple asserts that, in the course of a § 337 proceeding, the Commission must find the technical prong

---

[4]    Masimo only relied on the Circle Sensor and Wings Sensor for purposes of the economic prong of the domestic industry analysis as to the Poeze Patents, and the ALJ determined that the W1 Watch was produced after the time of the filing of the complaint and therefore could not be considered despite Masimo's reliance on it.

satisfied only by the exact article identified in the complaint. The law is not so rigid.

Neither the Tariff Act nor the APA supports Apple's contention. Section 337 specifies that:

> The Commission shall determine, with respect to each investigation conducted by it under this section, whether or not there is a violation of this section . . . . Each determination shall be made on the record after notice and opportunity for a hearing . . . .

19 U.S.C. § 1337(c). The APA adds that parties to an agency adjudication must receive notice of the time, place, and nature of a hearing; the legal authority and jurisdiction under which the hearing is to be held; and the matters of fact and law asserted. *See* 5 U.S.C. § 554(b). The APA additionally provides that agencies "may . . . adopt procedures for the submission of . . . evidence" during a proceeding. 5 U.S.C. § 556(d).

Pursuant to the APA, the Commission has promulgated regulations governing what a § 337 complaint must contain. *See id.*; *see also* 19 U.S.C. § 1335 ("The [C]omission is authorized to adopt such reasonable procedures and rules as it deems necessary to carry out its functions and duties."). Most pertinent here is 19 C.F.R. § 210.12(a)(9)(ix), which requires that "[t]he complainant shall make such showing [of an article protected by the asserted patent(s)] by appropriate allegations, and when practicable, by a chart that applies an exemplary claim of each involved U.S. patent to *a representative involved domestic article*" (emphasis added). This regulation does not require a complainant to identify, in its complaint, the exact physical article upon which it may ultimately rely throughout a § 337 investigation. It is sufficient for the complaint to identify "a representative" article.

Masimo's complaint satisfies this requirement. It expressly alleges: "With respect to the . . . [Poeze Patents], . . . Masimo's activities in the United States with respect to at least its Masimo Watch . . . constitute a domestic industry for purposes of Section 337." J.A. 3732 (¶ 86); *see also, e.g.*, J.A. 3708 (¶ 18). It further states: "Drawings, photographs, or other visual representations of *representative* Masimo domestic industry products (specifically, the Masimo Watch . . .) are attached hereto . . . . Claim charts showing how a *representative* Masimo domestic industry product practices exemplary claims of the . . . [Poeze Patents] . . . are attached hereto . . . ." J.A. 3733 at ¶ 89 (emphasis added). The complaint, thus, makes clear that the Masimo Watch is Masimo's identified domestic industry article, and it includes computer aided design ("CAD") drawings, among other visual depictions, of representative embodiments of that article, in satisfaction of § 210.12(a)(9)(ix). Apple cites no authority that should have restricted the ALJ's or the Commission's domestic industry investigation to only the representative CAD drawings provided in Masimo's complaint, or physical models identical to those drawings, rather than allowing them to make findings regarding the existence of a domestic industry article based on the totality of the evidence introduced during the five-day evidentiary hearing. *See* 19 C.F.R. § 210.38 (providing that ALJ must make findings based on full record developed at hearing).

In its reply brief, Apple articulates its position as being that "a complainant can[not] shift its legal theory regarding the relevant 'article' after filing the complaint." Reply Br. at 6. But Masimo did not alter its identified domestic industry article after filing its complaint. To the contrary, the Commission affirmed the ALJ's determination that Masimo "rel[ied] on certain 'Masimo Watch' products" to satisfy the domestic industry analysis, that "[t]h[o]se Masimo Watch products include certain prototypes," and that Masimo was not limited to the complaint's CAD

drawings. J.A. 10; *see also* J.A. 373 (Commission relying on ALJ's determination); *see also* Comm'n. Br. at 29 ("[T]he complaint did not purport to identify a singular hypothetical Masimo Watch that was merely represented by CAD drawings."). Those determinations were based on substantial evidence,[5] including the testimony of multiple witnesses to the effect that Masimo "designed, built, and tested many iterations of the Masimo Watch." J.A. 92 (citing J.A. 40487 at 393:12-20); *see also* J.A. 40436-37 at 342:25-343:7 (testimony regarding "many iterations of the wrist sensors"); J.A. 40439 at 345:2-7 (witness describing "[m]any iterations on the watch through the design phases"); J.A. 40368-69 at 275:13-276:11 (testimony as to how each subsequent model "gets a little bit better"). On this record, the ALJ and the Commission appropriately treated the Masimo Watch as the domestic industry article and viewed the CAD drawings contained in the complaint and the physical prototypes Masimo produced in discovery as successive embodiments of that same article.

ii

Apple next argues that the Commission was required to confine its technical prong analysis to the specific RevA, RevD, and RevE models Masimo produced during discovery (i.e., CPX-0052C, CPX-0058C, CPX-0019C, CPX-0020C, and CPX-0065C). The ALJ, when analyzing the RevA, RevD, and RevE models to see if they practiced Masimo's asserted patent claims, referred broadly to "the RevA, RevD, and RevE devices," without suggesting that her analysis was limited to only those particular physical units that happened to be produced in discovery. J.A. 87.

---

[5] The ALJ found, as a matter of fact, that "it [was] objectively reasonable to read the Amended Complaint" as not referring to a single Masimo Watch. J.A. 14136.

The APA allows parties to rely on a wide array of evidence during an administrative adjudication, *see* 5 U.S.C. § 556(d), and authorizes agencies to make rules regarding how such evidence is received, *see* 5 U.S.C. §§ 554(b), 556(d).  Here, the pertinent regulations provide that the ALJ and "[t]he Commission also may make any findings or conclusions that in its judgment are proper *based on the record* in the proceeding."  19 C.F.R. § 210.45(c) (emphasis added); *see also* 19 C.F.R. § 210.38.  Nothing in the Tariff Act, the APA, or the Commission's rules supports Apple's contention that the technical prong analysis must be confined to only those individual devices a complainant physically produces in discovery, as opposed to treating such devices as representative embodiments of the broader domestic industry article they are found to reflect.

Apple argues that the ALJ found only that "'prototype devices with designs that are *consistent with the asserted domestic industry products*,'" existed at the time Masimo filed its complaint, rather than finding that actual patent-practicing articles existed.  Open. Br. at 30 (quoting J.A. 89 at n.22).  But the ALJ's accompanying discussion explains that she found – based on testing, witness testimony, and other circumstantial evidence – that physical prototype devices sharing the patent-practicing features embodied in the RevA, RevD, and RevE units produced in discovery, were "articles protected by claims of the Poeze [P]atents existing at the time of the complaint."  J.A. 88-90.

iii

Apple next suggests that a complainant may not rely on circumstantial evidence to meet its burden to prove that a patent-practicing article existed at the time it filed its complaint.  *See, e.g.*, Open. Br. at 3 (faulting Commission for "allow[ing] Masimo to prevail on the theory that Masimo had provided *circumstantial* evidence that it had at one time possessed *different* pre-complaint items that practiced the patents"); *id.* at 19 (emphasizing that Masimo

"failed to provide direct evidence of a single pre-complaint item practicing the asserted patents"); *id.* at 30 ("If a patent-practicing physical article actually existed at the time of the complaint, the Commission should not have needed to resort to circumstantial evidence and speculative inferences . . . ."). In Apple's view, "the respondent, the Commission, and this Court should be able to *see* the claimed domestic industry article." Open. Br. at 31. To the extent this is a restatement of Apple's contention that the Commission is limited to analyzing only the specific, physical models produced in discovery, we have already rejected that view. If, alternatively, Apple more broadly means that circumstantial evidence is an unacceptable basis on which the Commission may find the domestic industry technical prong satisfied, Apple identifies no statutory, regulatory, or caselaw support for its position.

Indeed, the APA broadly sets out that "*[a]ny* oral or documentary evidence may be received" during an agency adjudication, and "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required." 5 U.S.C. § 556(d) (emphasis added). Nothing about this authorization restricts an agency's consideration solely to direct evidence. In general, "[c]ircumstantial evidence is just that – evidence [and is not] second-class to direct evidence." *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 70 F.4th 1331, 1337 (Fed. Cir. 2023). More particularly, as in *Medtronic*, "[Apple's] argument is tantamount to requiring that [the technical prong] can be proven only by direct evidence . . . rather than circumstantial evidence. . . . Our caselaw has never drawn any such distinction, nor would such a distinction be consistent with basic principles of evidence and inference." *Id.* We therefore reject Apple's contention that reliance on circumstantial evidence in § 337 proceedings is in any way improper.

iv

Accordingly, the Commission permissibly treated the Masimo Watch as Masimo's domestic industry article and reasonably viewed the RevA, RevD, and RevE versions of that watch – prototype units it found were manufactured and tested before the filing of the complaint – as physical articles practicing the asserted claims, thereby satisfying the technical prong's requirement that a material patent-practicing article exist at the time of the complaint.  Thus, the Commission did not rely on a "hypothetical" article as Apple wrongly asserts; instead the Commission identified as the pertinent patent-practicing article the Masimo Watch, as representatively described in Masimo's complaint, and supported by the prototypes Masimo produced in discovery, and as further proven by the testimony of multiple witnesses, product testing data, and other circumstantial evidence the ALJ credited.  The ALJ and the Commission were permitted to credit all of this evidence. Therefore, we discern no error in the Commission's reliance on the Masimo Watch as the patent-practicing article for purposes of the technical prong.

b

Having determined that the Commission properly relied on the Masimo Watch – which includes certain prototypes and is not limited to the CAD drawings in Masimo's complaint or the specific units produced in discovery – we turn to Apple's contention that those prototypes do not satisfy the technical prong of the domestic industry requirement because they do not practice any asserted claim of the Poeze Patents.  Apple specifically disputes Masimo's showing that, as of the complaint date, the Masimo Watch met the "user-worn" and blood oxygen measuring limitations of the asserted claims.  We conclude that substantial evidence supports the Commission's finding that, at the time of the complaint, the Masimo Watch was both user-worn and capable of measuring blood oxygen.

18                                                                              APPLE INC. v. ITC

i

Substantial evidence supports the Commission's finding that the RevA and RevD sensors were "user-worn" at the time of the complaint, even though the specific devices Masimo produced in discovery lacked a strap. The ALJ found that "each of [the produced RevA and RevD] sensors include[d] mechanisms for attaching a strap." J.A. 66. She additionally credited the testimony of a Masimo witness that the sensors "had straps at one point in time." J.A. 66 (internal quotation marks omitted). This combination of circumstantial and direct evidence constitutes substantial evidence supporting the finding that the Masimo RevA and RevD sensors were "user-worn" at the time of the complaint as required by the asserted claims.

ii

Substantial evidence also supports the finding that the RevA, RevD, and RevE sensors measured blood oxygen levels. The ALJ credited the testimony of Masimo's Mr. Al-Ali, who provided direct evidence that Masimo performed testing of the blood oxygen functionality of the RevA sensor in 2020, of the RevD sensor in early 2021, and of the RevE sensor in June 2021, all of which was before the July 12, 2021 complaint date. The ALJ additionally credited testimony from Masimo's expert, Dr. Vijay Madisetti, who stated he had observed successful blood oxygen calculation testing of each of the devices. The testimony of these witnesses, in combination with documents describing the results of these tests, is substantial evidence that "Masimo's sensors [were] configured to take oxygen saturation measurements" as of the time of the complaint. J.A. 67.

Thus, we affirm the Commission's determination that Masimo met its burden to prove that its Masimo Watch satisfies the technical prong of the domestic industry requirement of § 337.

2

We turn now to the economic prong of the domestic industry requirement. The economic prong "requires that there be in existence or in the process of being established an industry in the United States pertaining to the patent[(s)]." *Lashify*, 130 F.4th at 954 (internal quotation marks and alterations omitted). Section 337(a)(3) "identifies three potentially overlapping but independently sufficient bases" for finding the economic prong satisfied. *Id.* They are:

> (A) significant investment in plant and equipment;
>
> (B) significant employment of labor or capital; or
>
> (C) substantial investment in its exploitations, including engineering, research and development, and licensing.

19 U.S.C. § 1337(a)(3).

In her initial determination, the ALJ found Masimo had satisfied subsection (B) above, by showing "significant employment of labor or capital" by way of Masimo's "investments in research and development for the Masimo Watch." J.A. 322. The ALJ based this finding on evidence of the number of employees working on the Masimo Watch, Masimo's monetary investments in the Masimo Watch, and the fact that "all of the research and development ('R&D') for the Masimo Watch has occurred in the United States." *Id.* While the ALJ found that Masimo demonstrated a domestic industry both "in existence" and "in the process of being established," the Commission affirmed only the finding of a domestic industry "in existence," choosing not to reach the question of whether Masimo additionally proved an industry "in the process of being established." The Commission reasoned that the qualitative significance of Masimo's R&D in the Masimo Watch, and particularly the percentage of Masimo's R&D engineers working on the article and that their work was predominantly, if not

exclusively, domestic, was sufficient grounds to find the economic prong satisfied. The Commission concluded that a domestic industry therefore "exist[ed] . . . *with respect to* the articles protected by the patent." 19 U.S.C. § 1337(a)(3) (emphasis added).

Apple does not argue that Masimo's investments in the Masimo Watch were not "significant." Apple instead alleges that the Commission credited improper evidence in assessing that significance. Specifically, Apple argues the Commission erred in two respects: by crediting investments in non-patent practicing articles that were not, in Apple's view, made "with respect to the articles protected by the patent," and by relying on purportedly improper investment accountings. Apple does not dispute that, if properly credited, Masimo's investments would be "significant." Because the Commission committed no error in crediting Masimo's evidence of its investments, Apple's arguments fail.

a

As an initial matter, notwithstanding Apple's protestations, the determination of whether a complainant's investments are "with respect to" the patent protected articles is a question of fact, not law, and thus is one we review for substantial evidence. *See, e.g.*, *Zircon Corp. v. Int'l Trade Comm'n*, 101 F.4th 817, 822 (Fed. Cir. 2024) (holding that substantial evidence supported Commission's determination that complainant "failed to satisfy the statutory requirement that it establish the existence of an industry relating to the articles 'protected by the patent,' as required by section 337").

Turning to the evidence, Apple first argues that the Commission erred in crediting investments in prototypes of the Masimo Watch – which, in Apple's view, are not the articles upon which the technical prong was satisfied – as investments in the Masimo Watch generally. Again, Apple complains that the various prototypes produced in

discovery are not commensurate with the Masimo Watch alleged in the complaint, and additionally takes issue with the fact that some of the prototypes – namely, the Circle and Wings Sensors – do not practice the asserted claims of the Poeze Patents. Thus, it argues, it was error for the Commission to rely on investments in the Masimo Watch generally (i.e., all variations preceding the post-complaint W1 model) for the economic prong while relying instead on the RevA, RevD, and RevE models for the technical prong. As we have discussed, however, the Commission did rely on the same article for both the technical and economic prongs of the domestic industry analysis; namely, the Masimo Watch, which the ALJ and Commission defined to include particular Masimo Watch prototypes, all of which were made as part of an iterative design process involving the Circle, Wings, RevA, RevD, and RevE models. And, even if the Circle and Wings sensors were considered distinct articles from the patent-practicing RevA, RevD, and RevE devices – which they are not – that would present no legal obstacle, as § 337's technical prong requires only a patent-practicing article, while the economic prong requires significant investment with respect to that article. *See Lashify*, 130 F.4th at 954.

Apple counters that even if it was proper to view the various Masimo Watch prototypes as commensurate with Masimo Watch, the ALJ erred by also including in her analysis investments in the Circle Sensor and Wings Sensor, as these were non-patent practicing precursors to the patent-practicing RevA, RevD, and RevE models. As the ALJ observed, Masimo did "not assert[] that the Circle sensor or the Wings sensor practice claims of the [Poeze] [P]atents," but she found nevertheless that "the record show[ed] that the development of these prototypes led to the development of the RevA, RevD, and RevE prototypes that [Masimo did] assert[] as domestic industry products for the [Poeze] [P]atents." J.A. 309. From this, she concluded that such investments qualified as having been

22                                                                APPLE INC. v. ITC

made "with respect to" the patent-practicing Masimo Watch prototypes under § 337, even though the Circle and Wings sensors themselves do not practice the patents. J.A. 308-09.

The Commission properly adopted these findings and this reasoning. The ALJ's conclusion was entirely consistent with § 337(a)(3), which allows for significant investments in aspects of production other than the patent-practicing article itself to count toward meeting the economic prong. *See* 19 U.S.C. § 1337(a)(3) (allowing complainant to prove domestic industry based on "[s]ignificant investment in plant and equipment" or "[s]ubstantial investment in . . . engineering, research and development"). "[N]othing in § 337 precludes a complainant from relying on investments or employment directed to significant components, specifically tailored for use in an article protected by the patent. The investment must only be 'with respect to the articles protected by the patent.' An investment directed to a specifically tailored, significant aspect of the article is still directed to the article." *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1351 (Fed. Cir. 2013) (internal citation omitted); *see also Microsoft*, 731 F.3d at 1361-62 ("A company seeking section 337 protection must therefore provide evidence that its substantial domestic investment . . . *relates to* an actual article that practices the patent.") (emphasis added).

Substantial evidence, including the development timeline of the devices and witness testimony, supports the ALJ's finding that the Circle and Wings led to the development of significant features of the patent-practicing devices. *See, e.g.*, J.A. 308 (discussing development timeline); J.A. 40490-91 at 396:20-397:6 (testimony of Masimo witness discussing particular arrangements of elements within Circle and Wings sensors that contributed to later arrangement of same elements in the RevA and RevD models). As such, Masimo's investments in the development of the Circle and Wings sensors were investments "directed

to significant components, specifically tailored for use in" the Masimo Watch. *Motorola*, 737 F.3d at 1351. The investments in the Circle and Wings are, thus, investments "with respect to" or "relat[ing] to an actual article that practices the patent" and are, hence, appropriately counted toward Masimo's satisfaction of the economic prong. *Microsoft*, 731 F.3d at 1362.

To be sure, not every investment in an earlier generation prototype of a patent-practicing article can necessarily be considered part of the domestic industry analysis. Qualifying investments must be "specifically tailored" to the patent-practicing article. *Motorola*, 737 F.3d at 1351. Investments that would have been made independently of the patented article, for example, are not made "in the exploitation of the intellectual property" and, therefore, cannot be considered. *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 707 F.3d 1295, 1304 (Fed. Cir. 2013) (per curiam; denying petition for rehearing en banc); *see also Motiva*, 716 F.3d at 600 (finding investments that "had no impact on [the complainant's] . . . efforts or ability . . . to invest in and adopt its patented technology" were rightly not considered by Commission for purposes of economic prong); *see also Zircon*, 101 F.4th at 822 (rejecting complainant's attempt to "rely on investment data aggregated across different products protected by different patents"). Predecessor investments qualify only when they are directed to significant components "specifically tailored" for use in the patent-practicing article; that is, when there is a sufficient nexus between the earlier investment and the protected article, such that the investment can fairly be said to have been made "with respect to" that article. *Motorola*, 737 F.3d at 1351; *see also Microsoft*, 731 F.3d at 1362.

Here, substantial evidence supports the Commission's finding that Masimo's investments in the Circle and Wings Sensors were made as part of the same iterative design process Masimo undertook as part of its development of a

single patent-practicing commercial product, and those investments led to specifically tailored, significant technical features of patent-practicing articles, including the RevA and RevD variants of the Masimo Watch.

b

Apple further argues that, even assuming the Commission did not err by aggregating Masimo's investments, its finding that Masimo satisfied the economic prong is still not supported by substantial evidence. Apple contends that Masimo failed to provide a proper accounting of its purported investments. In particular, Apple asserts that the evidence on which Masimo relied was "wholly invented" for litigation, lacked contemporaneous support, and was not verified by Masimo's expert. These arguments effectively ask us to reweigh the evidence considered by the ALJ and the Commission and to reject the ALJ's credibility determinations. This we may not do. *See Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) ("It is not within our purview to reweigh the evidence or to question the ALJ's credibility determinations.").

The ALJ and Commission, relying on testimony from Masimo's Chief Financial Officer, found that Masimo calculated its total labor investments in the Masimo Watch by multiplying each Masimo employee's salary by the percent of time he or she devoted to development of the Masimo Watch. It presented that data in detailed spreadsheets that "identified the names and salaries of each employee involved in the Masimo Watch project" alongside "monthly estimates of their time from 2019 to 2021" spent on the Masimo Watch. J.A. 316. The ALJ found those time allocations were "supported by the testimony of Masimo witnesses" and were "reasonable" based on the record evidence. J.A. 316-18. On review, the Commission adopted all of these findings and added that Masimo's investments were significant because they were almost entirely domestic.

"The substantial evidence test requires only that there be evidence that a reasonable mind might accept as adequate to support a conclusion." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007). That test is met by the evidence relied on here by the ALJ and the Commission. *See, e.g.*, *Wuhan Healthgen Biotechnology Corp. v. Int'l Trade Comm'n*, 127 F.4th 1334, 1338-39 (Fed. Cir. 2025) (determining substantial evidence supported finding of significant investment where "100% of [the relevant] investments occur[ed] in the United States"). Thus, we affirm the Commission's finding that Masimo met its obligation to satisfy the domestic industry requirement.

## IV

In addition to its challenges to the Commission's determination that Masimo satisfied the domestic industry requirement, Apple also appeals the Commission's findings that the Apple Watch infringes the asserted claims and that those claims were not proven invalid, either for lack of adequate written description or obviousness. On all these issues, we again affirm the Commission.

## A

Apple argues the Commission based its finding that the Apple Watch infringes Masimo's asserted patent claims on incorrect constructions of the claim terms "over"/"above" and "openings"/"through holes." "We review claim construction de novo and review any subsidiary factual findings based on extrinsic evidence for substantial evidence." *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022). Our review here leads us to agree with the ALJ's claim constructions.[6]

---

[6] The Commission did not undertake to review the ALJ's challenged constructions but otherwise affirmed her

1

The claim terms "over" and "above" relate to certain internal components of the claimed devices and their orientation. For example, claim 28 of the '502 patent requires "a protrusion arranged *above* the interior surface" of the device. J.A. 705 at 47:31 (emphasis added). The parties dispute whether, for instance in this example, the claim requires the protrusion be "above" the interior surface such that the protrusion is higher (i.e., closer to the sky) than the interior surface when the device is in operation or whether, instead, it requires simply that the protrusion cover the interior surface, without consideration of whether during operation the protrusion happens to be higher (closer to the sky) or lower (closer to the ground) than the interior surface.

The ALJ construed "above," as used in claim 28 of the '502 patent, and "over," as used in claims 20 and 34 of the '648 patent, to mean "arrangement[s] where one feature covers another – not the relative arrangement of the[] features in a vertical direction." J.A. 34. That is, the terms "refer[] to a position relative to the device's features and not to its orientation relative to Earth." *Id.* at n.4. In arriving at those constructions, the ALJ rejected Apple's position that the terms "require a vertical arrangement of features in a particular orientation." J.A. 35; *see also* Open. Br. at 60 ("[E]ach claim requires a protrusion, openings, or holes situated over or above the photodiodes or interior surface of the device, when the device is configured to measure blood oxygen saturation") (internal emphasis and quotation marks omitted).

As the ALJ correctly determined, the plain and ordinary meaning of "over" and "above," as used in the field of

_____

ultimate validity determination. Therefore, we discuss the ALJ's analysis.

wearable medical equipment, relates to positions of the equipment's components relative to other components, without any further restriction on the orientation of the device. Thus, for example, a bandage is said to be "over" or "above" a wound so long as the bandage covers the wound, even if the wound is on the bottom of, for example, one's foot, leaving the bandage closer to the ground than the wound is when one is walking.

Additional support for this construction is found in Figure 7A of the Poeze Patents' shared specification. The ALJ explained that the embodiment depicted in Figure 7A (reproduced below, *see infra* Section IV.B.1) is described in the specification as containing material "over" a glass layer even though the figure itself shows such material as below that layer, in the sense that the material is closer to the ground than the glass layer. Generally, a construction that would exclude a disclosed embodiment, as Apple's construction would by excluding the embodiment of Figure 7A, is not preferred. *See Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1026 (Fed. Cir. 2015). We therefore agree with the ALJ's construction.

2

Apple's challenge to the ALJ's construction of "openings"/"through holes," as used in all asserted claims, also lacks merit. The claims require that "each *through hole* [be] . . . arranged over a different one of the . . . photodiodes." J.A. 815 at 46:43-45 (emphasis added). The ALJ correctly construed these terms as encompassing "openings and holes that include material." J.A. 36. She was right to reject Apple's proposed construction, which would have required the claimed "openings" and "through holes" to be devoid of material, including even transparent material.

Nothing in the claim language precludes the "openings" and "through holes" from including material. To the contrary, certain of the claims actually *require* such material. For example, claim 19 of the '502 patent requires "an

optically transparent material *within each of the openings,*" J.A. 704 at 46:38 (emphasis added), and claim 20 of the '648 patent requires that "each through hole *includ[e] a window,*" J.A. 815 at 46:43-44 (emphasis added). While these claims are not asserted by Masimo, they would suggest to a person of ordinary skill in the art that "openings" and "windows" as used in the patents are not necessarily and always devoid of material. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").

The shared specification provides more support for this conclusion. It expressly teaches that "[t]he openings can be made from glass to allow attenuated light from a measurement site, such as a finger, to pass through one or more detectors." J.A. 575 at 8:26-30; *see also* J.A. 37. Apple's proposed construction would exclude this embodiment because it would not allow the openings to be made from glass, which is of course a material. *See Pacing Techs.*, 778 F.3d at 1026 (disfavoring constructions that exclude disclosed embodiments). As such, we do not agree with Apple's proposed construction of these terms.

As Apple's sole challenges to the Commission's infringement findings require that we reverse its claim constructions, our affirmance of those constructions requires that we also affirm the Commission's finding that the Apple Watch infringes the asserted claims.

### B

Apple has similarly failed to persuade us that the Commission erred in determining that the infringed claims were not proven invalid. We agree with the Commission and reject Apple's claims that the Poeze Patents lack adequate written description or would have been obvious.

1

A patent's specification must contain an adequate written description of the invention. *See* 35 U.S.C. § 112(a). "A specification adequately describes an invention when it reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1335 (Fed. Cir. 2021) (internal quotation marks omitted). "Whether a claim satisfies the written description requirement is a question of fact." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 38 F.4th 1013, 1016 (Fed. Cir. 2022) (internal quotation marks omitted).

Each of the claims at issue here requires: (i) sets of LEDs, each set having multiple LEDs; (ii) four photodiodes; and (iii) an opaque protrusion with a plurality of "openings" or "holes" positioned or arranged over the photodiodes. J.A. 704 at 46:51-54; J.A. 705 at 47:13-48:23; J.A. 815 at 46:15-16, 46:59-61; J.A. 816 at 47:6-7; *see also* J.A. 161-62. Claim 28 of the '502 patent and claim 12 of the '648 patent additionally require "separate sets of LEDs emitting at a First Wavelength and a Second Wavelength" (the "matching wavelength" limitation). J.A. 167. Apple argues that neither the required combination of specific LEDs and photodiodes, nor the matching wavelength limitations, are supported by adequate written description. However, the ALJ's contrary findings, adopted by the Commission, are supported by substantial evidence.

Apple contends that the ALJ improperly relied "on elements taken from four separate embodiments" in the specification to find the asserted claims' combination of required elements supported by adequate written description. Open. Br. at 55. Specifically, Apple claims the ALJ relied on the 301A sensor embodiment (shown in Figure 3C) to disclose the required four photodiodes over which a protrusion rests with openings arranged over the photodiodes; on the 101 sensor embodiment (shown in Figure 1) for

disclosure of an emitter with three or more LEDs; and on the 701 sensor embodiment (shown in Figure 7B) for an opaque protrusion. Apple concedes that the specification discloses all of the claimed features but insists that it fails to do so in any single embodiment.

The ALJ found that "[t]he specification of the Poeze [P]atents expressly states that Figure 3C and Figure 7B are not distinct embodiments" but, instead, that "[t]he features of the sensors 701 can be implemented with any of the sensors 101, 201, [and] 301." J.A. 164. In making that finding, the ALJ noted additional places in the specification in which the embodiments are linked. *See, e.g.*, J.A 163 (referencing specification's description of "system 100 that [is] comprised [of] four LEDs in emitter 104 and four independent detector streams from detector 106"). She further credited Masimo's expert, who testified as to how a skilled artisan would understand these disclosures to show the patentee had possession of the embodiments of the claims. All of this constitutes substantial evidence supporting the ALJ's finding that the embodiments Apple insists are distinct may, instead, be understood as disclosing a combined implementation contained in a single embodiment. Thus, the Commission did not erroneously rely on an "amalgam of disclosures plucked selectively from the [original] application." *NovozymesA/S v. Dupont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013).

Substantial evidence further supports the Commission's finding that the Poeze Patents provide adequate written description for claim 28 of the '502 patent and claim 12 of the '624 patent. These claims add the matching wavelength limitation, *i.e.*, a "first set of LEDs comprising at least an LED configured to emit light at a first wavelength and an LED configured to emit light at a second wavelength," as well as a "second set of LEDs comprising at least an LED configured to emit light at the first wavelength and an LED configured to emit light at the second wavelength." J.A. 414; *see also* J.A. 419-24.

Apple argues that the patents contain no disclosure of multiple emitters having an identical set of LEDs. In rejecting this contention, the Commission found the inventors possessed the matching wavelength limitation, relying on Figures 7A and 7B, both of which show an element 104, although Figure 7A labels element 104 "LEDs" while Figure 7B labels the same element "Emitters." J.A. 522-23. Figures 7A and 7B are reproduced below:



FIG. 7A                    FIG. 7B

*Id.* (annotations added).

The Commission reasoned "the two LEDs in Figure 7A are the same, and the two emitters in Figure 7B are the same," further finding "[i]f the two sets of LEDs or the two emitters having sets of optical sources are the same, then they must emit the same visible and near-infrared optical radiation, i.e., at the same two respective wavelengths." J.A. 422. The Commission additionally found that the specification discloses a set of LEDs in each emitter 104 of Figure 7B capable of emitting light "at or about 1610 nm, at or about 1640 nm, and at or about 1665 nm." J.A. 424 (citing J.A. 577 at 12:38-40).

The Commission's findings are supported by substantial evidence. Its reading of the specification's references to element 104 is reasonable. Apple's insistence that "nothing in the specification states that the emitters 104 *must* be identical" is correct, Open. Br. at 58 (emphasis added), but is also largely irrelevant, as our review only asks whether there is substantial evidence to support reading the specification as disclosing, as the Commission found, that emitters 104 may be identical. *See Bio-Rad*, 998 F.3d at 1329 ("Under substantial evidence review, we must affirm a Commission determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from the Commission's conclusion.") (internal quotation marks omitted).

Therefore, again, we affirm the Commission's finding that the asserted claims are not invalid for lack of adequate written description.

2

Apple additionally argues that the asserted claims are invalid as obvious in view of U.S. Patent No. 7,620,212 ("Lumidigm"), which generally discloses devices containing "electro-optical sensors" that, in some embodiments, can be used for "biometric identification." The Commission rejected Apple's obviousness case after finding Lumidigm does not disclose (i) measuring blood oxygen level at the wrist, or (ii) transmissive windows extending across openings and within openings. "The ultimate question of obviousness is a legal question that we review de novo with underlying factual findings that we review for substantial evidence." *Roku, Inc. v. Universal Elecs., Inc.*, 63 F.4th 1319, 1324 (Fed. Cir. 2023). Here the ALJ, whose determinations were adopted by the Commission, committed no legal error and her factual findings were supported by substantial evidence.

One premise of the ALJ's rejection of Apple's obviousness defense was her determination that Lumidigm failed

to enable a "user-worn" device capable of measuring blood oxygen saturation at the wrist. Apple faults the ALJ's analysis on this point because, in its view, the device of the asserted claims is not required to measure blood oxygen levels *at the wrist*; therefore, prior art likewise need not enable such an embodiment to be invalidating. Regardless of whether Apple's proposition is correct (an issue we need not decide), it is immaterial, for two reasons. First, Apple chose to premise its obviousness theory on Lumidigm teaching measurement of blood oxygen levels at the wrist, requiring the ALJ to assess whether Lumidigm does so, in order to determine whether Apple had proven its own theory of obviousness. Second, and an independently adequate basis for rejecting Apple's obviousness case, is that Lumidigm fails to disclose measuring blood oxygen saturation *at all, anywhere on the body*, yet that functionality is indisputably a limitation of the asserted claims.

With respect to the second point, the ALJ found in particular that "[t]here is little to no technical description of the blood oxygen functionality in Lumidigm." J.A. 120 n.40. She further determined that Lumidigm "does not include the communication of an oxygen saturation measurement . . . because no such measurement is disclosed in Lumidigm." J.A. 138. The ALJ explicitly found that Lumidigm merely "describes functionality for measuring several different physiological parameters," but not blood oxygen saturation. J.A. 97.

The ALJ's factual finding regarding what Lumidigm discloses, and does not disclose, is supported by substantial evidence. The intrinsic record supports finding Lumidigm discloses measuring "physiological state[s]" generally by way of "electro-optical sensors;" it does not describe measuring blood oxygen specifically, nor does it give any direction to a skilled artisan regarding how one might modify its disclosures in order to measure blood oxygen levels. The ALJ also relied on the testimony of Robert Rowe, an inventor of Lumidigm, who testified that "he never made a device

that calculated blood oxygen." J.A. 120. The ALJ, thus, had substantial evidence for her finding that Lumidigm does not teach the claim limitation of measuring blood oxygen levels.

This conclusion makes it unnecessary to consider Apple's additional argument that the ALJ erred in finding Lumidigm failed to render obvious the asserted claims' "separate windows" limitation. Thus, we affirm the Commission's conclusion that Apple failed to prove the asserted claims are invalid due to obviousness.

V

Finally, Apple contends that the Commission erred in concluding that prosecution laches did not render Masimo's asserted patents unenforceable. "[P]rosecution laches may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution." *Symbol Techs., Inc. v. Lemelson Med., Educ. & Rsch. Found.*, 422 F.3d 1378, 1385 (Fed. Cir. 2005). "[A]n examination of the totality of the circumstances, including the prosecution history of all of a series of related patents and overall delay in issuing claims, may trigger laches." *Id.* at 1386. We review a determination of the applicability of prosecution laches for abuse of discretion. *See Hyatt v. Hirshfeld*, 998 F.3d 1347, 1359 (Fed. Cir. 2021).

Apple argued to the Commission that Masimo engaged in an unreasonable 12-year delay when it waited from 2008, when it filed its provisional applications, to September 2020, when it finally filed the applications that led to the asserted patent claims. The ALJ considered this interlude and found it did not constitute a delay at all, crediting testimony showing "continuous prosecution activity in the [asserted] patents during th[at] time." J.A. 177. Apple countered that "the 2015 continuation application could

have been filed earlier,"[7] J.A. 178, and that Masimo's pur-
ported delays reflect Masimo's intent "to draft the claims
only after reviewing Apple's products." Open. Br. at 64. To
the ALJ, the fact that Masimo could have filed its continu-
ation application earlier was "not a sufficient basis for a
finding of prosecution laches, as . . . there are legitimate
grounds for refiling a patent application which should not
normally be grounds for a holding of laches," adding that
laches "should be applied only in egregious cases of misuse
of the statutory patent system." J.A. 178 (internal quota-
tion marks, alteration, and citation omitted). The ALJ fur-
ther found that Apple did "not provide[] evidence showing
that [the] newly asserted claim limitations were specifi-
cally drawn to the Accused products." J.A. 179 n. 65.

Assuming, without deciding, that Apple preserved its
prosecution laches claim, Apple has failed to demonstrate
that the ALJ abused her discretion in rejecting it. To the
contrary, it was entirely reasonable for the ALJ to find,
based on the evidence before her, that Apple failed to meet
its burden to prove that Masimo engaged in unreasonable
and unexplained delay and to credit, instead, Masimo's ex-
pert, who opined that there was a "continuous unbroken
chain of patent prosecution." J.A. 41512 at 1415:6-7. There
is also no record evidence that Masimo delayed any prose-
cution activities for the purpose of drafting the claims to
cover Apple's products. *See OSI Pharms., LLC, v. Apotex
Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) ("Mere specula-
tion is not substantial evidence"); *see also In re Bogese*, 303
F.3d 1362, 1369 (Fed. Cir. 2002) ("An applicant's attempt

---

[7]     Masimo consistently filed continuations and con-
tinuations-in-part between summer 2008 and July 1, 2010.
Apple contends that "Masimo then lay in wait and did not
file a new application in the chain for five years . . . imme-
diately following the release of the original Watch Series 0
in April 2015." Open. Br. at 63.

to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application [is distinct from laches].").  Therefore, we affirm the Commission's finding that prosecution laches does not bar Masimo from enforcing its asserted patents.

VI

We have considered Apple's remaining arguments and find they lack merit.  For the foregoing reasons, the judgment of the Commission is affirmed.

**AFFIRMED**

# STATUTORY ADDENDUM
## (Pursuant to Fed. Cir. R. 40(d)(2))

**19 U.S.C. § 1337(a)(2)-(3)**

**(a)    Unlawful activities; covered industries; definitions**


(2)    Subparagraphs (B), (C), (D), and (E) of paragraph (1) apply only if an industry in the United States, relating to the articles protected by the patent, copyright, trademark, mask work, or design concerned, exists or is in the process of being established.

(3)    For purposes of paragraph (2), an industry in the United States shall be considered to exist if there is in the United States, with respect to the articles protected by the patent, copyright, trademark, mask work, or design concerned—

(A)    significant investment in plant and equipment;

(B)    significant employment of labor or capital; or

(C)    substantial investment in its exploitation, including engineering, research and development, or licensing.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of May, 2026, I filed the Non-Confidential Combined Petition for Panel Rehearing and Rehearing En Banc with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

May 4, 2026

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1.      The filing has been prepared using a proportionally-spaced typeface and includes 3,897 words (including nine legible words that appear in PDF images).

2.      The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark D. Selwyn
MARK D. SELWYN
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA  94306
(650) 858-6000

May 4, 2026